[No. 10,639.—Department One.]

## THE PEOPLE v. HENRY HUNT.

New Trial — Criminal Law — Misconduct of Juror — Affidavit of Juror.—An affidavit of a juror may be received in support of the verdict, when attacked for misconduct on the part of the jurors.

Murder—Instructions — Intent — Reasonable Doubt.—The Court instructed the jury, that "intent, or intention, is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. The intent must be proved, but when an unlawful act has been proved, the law presumes it to have been intended, and the proof of justification lies on the defendant;" and it was objected to this instruction, "that it requires the defendant to prove his justification absolutely, whereas he is only obliged to prove his justification within, and not beyond, a reasonable doubt."

Held: The instruction has no reference to the measure of proof required on behalf of the defendant, but simply states a well-settled principle of law.

Id.—Id.—Degrees of Offense.—The Court instructed the jury that "if the jury believe from the evidence that the deceased died from the effect of a wound inflicted by the defendant, and that said wound was inflicted with malice aforethought, then they should find the defendant guilty of murder;" and it was objected that the instruction did not inform the jury of which degree of murder they should find the defendant guilty.

Held: It would have been error for the Court to have instructed the jury as to the degree of murder established by the evidence.

Id.—Id.—Intent—Relevancy of Instructions.—The Court instructed the jury that "every man is presumed to intend what his acts indicate his intentions to have been, and if the defendant fired a loaded pistol at the deceased and killed him, the law presumes that the defendant intended to kill the deceased; and unless the defendant can satisfactorily show that his intention was other than his act indicated, the law will not hold him guiltless;" and it was claimed that the instruction was erroneous "because it is not predicated upon any logical deducible theory of any portion of the evidence." Held: The instruction was properly given.

Id.—Id.—Degrees of Offense—Manslaughter.—The Court instructed the jury that "if the jury believe from the evidence that the defendant, with malice aforethought, or without considerable provocation, inflicted a wound upon the deceased, and that the deceased died from the wound so inflicted by defendant, and that there was no justification for the infliction of said wound, the defendant must take the whole consequence of his wrongful act, and the jury find him guilty of murder."

Held: It is possible that the instruction by itself is not precisely correct; but in view of other instructions the jury could not have been misled by it, and therefore the defendant was not prejudiced. The Court told the jury in several instructions that there could be no murder without malice aforethought, and clearly pointed out the distinction between murder in the first degree, murder in the second degree, and manslaughter, showing the necessary presence and existence of malice in the two former, and the absence of malice in the last.

ID.—ID.—SELF-DEFENSE—JUSTIFICATION.—The court instructed the jury that "no man can by his own lawless acts create a necessity for self-defense, and then upon killing the person with whom he seeks the difficulty interpose the plea of self-defense; for when a person has by his own lawless acts brought upon himself the necessity to commit a crime, he can not shield himself by the plea of necessity from immunity from punishment for the crime committed. The plea of necessity is a shield for those only who are without fault in occasioning it and in acting under it;" and it was objected that there was no evidence in the case which rendered such an instruction proper. *Held:* The instruction was a proper one in view of the circumstances attending the homicide.

ID.—ID.—INTENTION—MALICE AFORETHOUGHT—MURDER IN THE FIRST DEGREE—DEFINITION.—The Court instructed the jury that "the unlawful killing must be accompanied with a deliberate and clear attempt to take life in order to constitute murder in the first degree. There need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and if such is the case, the killing is murder in the first degree—no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing." *Held:* The instruction is strictly correct.

ID.—SUFFICIENCY OF EVIDENCE—INTERFERENCE TO KEEP THE PEACE.—The circumstances of the killing are thus detailed by one of the witnesses: "I was behind the bar when defendant brought T. in; he said, 'You son ——, do you think that of me?' and began shoving him backwards and forwards against the corner of the desk. G. (the deceased) stepped up from behind him, caught him by the shoulders, and pulled him back, saying, 'Don't strike him any more.' Defendant turned partly around, saying, 'What have you to do with this?' G. said, 'I am a peace officer.' At that time defendant slapped G. in the face with his right hand. G. went out of my sight, defendant turned his back to me, and when defendant slapped G. he said, 'You son ——.' Heard a shot fired, and heard G. say, 'I am shot.' G. and T. were running across the street; defendant fired two shots at them." This is in substance the evidence of other witnesses, and the defendant admitted to the officer who made the arrest that he shot the deceased, claiming, however, that G. was "about to draw his gun on him," and that he (defendant) drew his gun and shot G. G. was unarmed.

*Held:* There is no substantial conflict in the evidence except that which is found in the uncorroborated statement of the defendant, and his evidence standing alone and uncontradicted does not acquit him of guilt.

APPEAL from a judgment of conviction, and from an order denying a new trial in the Superior Court of the County of Los Angeles. SEPULVEDA, J.

*Eastman, Haley, King,* and *Robarts,* for Appellant.

*A. L. Hart*, Attorney General, for Respondent.

MORRISON, C. J.:

The defendant was convicted of the crime of murder in the first degree, and the jury fixed his punishment at imprisonment for life in the State prison, under Section 190 of the Penal Code. On a motion for a new trial, as well as upon this appeal, the defendant assigned numerous errors in the proceedings of the trial court, all of which will be briefly examined in this opinion.

1. The alleged misconduct of the juror Anderson will be first considered. The affidavit of one Walker was filed on behalf of the defendant, in which it was charged that the juror, some time before the trial, had expressed an opinion unfavorable to the defendant, and, further, that the juror, while the trial was progressing, was guilty of misconduct. This affidavit was met by the affidavit of the juror, denying all the material statements contained in the affidavit of Walker; showing that he, Anderson, was a duly qualified and impartial juror in the case, and exonerating himself from all improper conduct during the progress of the trial. It is claimed that the Court below erred in admitting the affidavit of the juror to disprove the charges contained in the affidavit of Walker. We do not think so. If such were the rule, it would be a very easy matter to set aside the verdict of a jury in every criminal case. The affidavit of some irresponsible person is presented, in which he charges the juror with misconduct. No one was present at the time; and if the juror can not be heard, there is no possible way in which the charge can be met and disproved by the prosecution. But such is not the rule. " An affidavit of a juror is received in support of the verdict when attacked for misconduct on the part of the jurors." (Proffatt on Jury Trials, § 410; *State* v. *Ayer*, 23 N. H. 301; *Cannon* v. *The State*, 3 Tex. 31; *Barlow* v. *The State*, 2 Blackf. 114.) The affidavit of the juror was admissible, and as it fully refuted all the charges contained in the affidavit of Walker, the Court did not err in refusing to set aside the verdict on that ground.

2. The next point made is, that instruction No. 7 was improperly given. The instruction is as follows : " Intent or in-

tention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused. The intent must be proved, but when an unlawful act has been proved, the law presumes it to have been intended, and the proof of justification lies on the defendant."

The objection to the foregoing instruction is, "that it requires the defendant to prove his justification absolutely, whereas he is only obliged to prove his justification within and not beyond a reasonable doubt." We do not so regard the instruction. It has no reference to the measure of proof required on behalf of the defendant, but simply states a well-settled principle of law, that when the perpetration of an unlawful act has been proven, the law presumes it to have been intended. It is never required of the prosecution to prove an unlawful intent by positive and direct evidence. In many cases such proof could not be made, and it is deemed sufficient to prove the unlawful act, and from such proof the law presumes an unlawful intent.

3. The next objection is to the eighth instruction. There must be some misapprehension of counsel respecting this instruction, as it appears from the transcript that the eighth instruction was refused by the Court.

4. The fourth ground of error is, that the Court erred in giving the eleventh instruction as follows: "If the jury believe from the evidence, that the deceased died from the effect of a wound inflicted by the defendant, and that said wound was inflicted with malice aforethought, then they should find the defendant guilty of murder."

It is objected that the instruction did not inform the jury of which degree of murder they should find the defendant guilty. It would have been error for the Court to have instructed the jury as to the degree of murder established by the evidence, and it was properly left to the jury to determine the degree. (*People* v. *Gibson,* 17 Cal. 283; *People* v. *Woody,* 45 id. 289.)

The twelfth instruction was, that " Every man is presumed to intend what his acts indicate his intentions to have been, and if the defendant fired a loaded pistol at the deceased and killed him, the law presumes that the defendant intended to

kill the deceased; and unless the defendant can satisfactorily show that his intention was other than his act indicated, the law will not hold him guiltless."

It is claimed that the above instruction was erroneous, "because it is not predicated upon any logical deducible theory of any portion of the evidence." We will show hereafter, that there was an abundance of evidence upon which to predicate the instruction, and that it was properly given.

5. The fourteenth instruction was in the following language: "If the jury believe from the evidence that the defendant, with malice aforethought, or *without considerable provocation*, inflicted a wound upon the deceased, and that the deceased died from the wound so inflicted by defendant, and that there was no justification for the infliction of said wound, the defendant must take the whole consequence of his wrongful act and the jury find him guilty of murder."

The assignment of error to the giving of the foregoing instruction, is in the following language: "The Court erred in giving instruction number 14, asked by the prosecution, in that it does not instruct the jury of the degree of murder of which, based upon the evidence, they should find the defendant guilty, if at all; instructing the jury to find him 'guilty of murder,' deprives the jury of that discretion and privilege of determining the grade of the offense of which, based upon the evidence, they are by law invested. And, further, that said instruction assumes to instruct the jury upon a question of fact, to wit, that the deceased died from the effects of his wounds within a year and a day."

We do not think that the instruction is obnoxious to any of the objections made to it. It is possible, however, that the instruction by itself is not precisely correct; but in view of other instructions preceding and following it, the jury could not have been misled by it, and, therefore, the defendant was not prejudiced. The Court told the jury in several instructions, that there could be no murder without malice aforethought, and clearly pointed out the distinction between murder in the first degree, murder in the second degree, and manslaughter; showing the necessary presence and existence of malice in the two former, and the absence of malice in the last.

6. Instruction 16 was as follows: "No man can by his own lawless acts create a necessity for self-defense, and then upon killing the person with whom he seeks the difficulty interpose the plea of self-defense; for when a person has by his own lawless acts brought upon himself the necessity to commit a crime he can not shield himself by the plea of necessity from immunity from punishment for the crime committed. The plea of necessity is a shield for those only who are without fault in occasioning it, and in acting under it."

It is admitted that the instruction properly stated an abstract proposition of law, but it is claimed that there was no evidence in the case which rendered such an instruction proper. This objection will be answered when we review the evidence. It is sufficient for us to say, at this time, that we think there was evidence in the case which rendered such an instruction a proper one in view of the circumstances attending the homicide.

7. The next assignment of error is that "the Court erred in giving instruction 19, in that it does not correctly state to the jury the requirements of the law to constitute murder in the first degree; it does not instruct them that for them to find the defendant guilty of murder in the first degree the act of the defendant must have been deliberate, preconceived, premeditated, and accompanied by malice aforethought." The instruction is: "The unlawful killing must be accompanied with a deliberate and clear attempt to take life in order to constitute murder in the first degree. There need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and if such is the case, the killing is murder in the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing." The instruction is strictly correct, and is taken from the case of *The People* v. *Sanchez,* 24 Cal. 30, approved in *The People* v. *Nichol,* 34 id. 211.

8. The next and last assignment of error is, that the verdict of the jury is contrary to the law and the evidence. We

have examined the instructions and the objections made to them, and find no such error in the instructions as would justify a reversal of the judgment.

We will next proceed to a brief examination of the evidence:

The name of the deceased was George W. Gillis, and the homicide was committed at the house of one W. R. Dodson, at El Monte, in the County of Los Angeles, on the night of January 11, 1881. The prosecution first called as a witness one Rollin T. Burr, a physician and surgeon, who attended the deceased after he was shot, and made a *post mortem* examination of the body. He testified to the character of the wound and the cause of death, which resulted from the wound within a few hours after it was inflicted. Several witnesses were afterwards called, who testified to the circumstances attending the shooting, and although they differ as to some minor and unimportant details, they all substantially agree upon the main facts accompanying the homicide.

The defendant and one Tinker had a difficulty out in the road, resulting from a charge made by the latter against the former, respecting an insult offered by defendant to Tinker's wife. This disagreement seems to have been made up, whereupon Tinker invited the defendant into a saloon to take a drink. The defendant accompanied Tinker into the saloon, but refused to drink with him, and, it is claimed, Tinker made an offensive remark. The affair is described by the witness Forbes in the following language: "I was in the bar-room at the time the affair occurred. Defendant came in bringing Tinker with him—do not know how the row began before that. Defendant shoved Tinker against the counter. Gillis was there and stepped and caught defendant by the shoulder, saying, 'Don't hurt this man.' Defendant turned and said, 'Who the hell are you? You son ——, what have you to do with this?' and jerked him around against the door, facing and pushing him (Gillis) out; then I heard the report of a pistol, saw the flash, and heard Gillis say, 'I am shot.' Saw Gillis and Tinker run across the street. Defendant fired twice at them as they ran." The witness Dodson gives a somewhat different, but not materially different, account of the transaction. He says: "I was behind the bar at the time

when defendant brought Tinker in.   He said, 'You son ——,
do you think that of me ?' and began shoving him backwards
and forwards against the corner of the desk.   Gillis stepped
up from behind him, caught him by the shoulders, and pulled
him back, saying, 'Don't strike him any more.'   Defendant
turned partly around, saying, 'What have you to do with
this ?'   Gillis said, 'I am a peace officer.'   At that time, to
the best that I could see, defendant slapped Gillis in the face
with his right hand.   Gillis went out of my sight, defendant
turned his back to me, and when defendant slapped Gillis he
said, 'You son ——.'   Heard a shot fired, and heard Gillis
say, 'I am shot.   Oh! you shot me.'   *   *   *   Gillis and
Tinker were running across the street; defendant fired two
shots at them."

This is in substance the evidence of other witnesses, and
the defendant admitted to the officer who made the arrest
that he shot the deceased, claiming, however, that Gillis was
"about to draw his gun on him," and that he, defendant,
"drew his gun and shot Gillis."

In the whole matter the defendant was in fault.   He ad-
mits that he was *striking* Tinker at the time Gillis interfered,
and all the evidence in the case goes to show that the inter-
ference of Gillis was intended to prevent any further breach
of the peace.   For this purpose he had a perfect right to in-
terfere; but such interference, instead of pacifying the de-
fendant, served but to increase the defendant's anger, and to
make Gillis the victim of his malice.   There is no substan-
tial conflict in the evidence, except that which is found in
the uncorroborated statements of the defendant, and his evi-
dence, standing alone and uncontradicted, does not acquit him
of guilt.   He was the aggressor, and Gillis made no attempt
to inflict any injury upon him.   Indeed, the evidence all
shows that Gillis was unarmed, whereas the defendant had
on his person a revolver, dirk-knife, and pair of brass
knuckles.   The pretext that Gillis made a demonstration, in-
dicating an intention to draw a weapon, is too weak to merit
any consideration, and it received none at the hands of the
jury.

We are of the opinion that the evidence throughout sup-

ported the verdict of the jury, and will therefore affirm the judgment and order denying the defendant a new trial.

Judgment and order affirmed.

Ross and McKinstry, JJ., concurred.