## TERRITORY OF MONTANA, RESPONDENT, *v.* JOHNSON, APPELLANT.

CRIMINAL LAW—*Instruction requiring jury to designate degree of murder.*—An instruction which is a verbatim copy of section 21, division 4, Compiled Statutes, defining murder in the first and second degrees, and requiring the jury to designate by their verdict the degree thereof, is proper, when followed by a full charge upon the crime of manslaughter, and that the jury could not convict of a higher crime unless every characteristic of such higher crime was proved beyond a reasonable doubt, and that they must acquit the defendant if they had any reasonable doubt of his guilt.

SAME—*Character.*—Where the evidence as to the bad character of the deceased was very slight, an instruction which assumes that the character of the deceased for violence had been proved was properly refused.

EVIDENCE.—The evidence reviewed and held sufficient to support a conviction of murder in the first degree.

*Appeal from the Second Judicial District, Deer Lodge County.*

The defendant was tried before DE WOLFE, J.

Statement of facts, prepared by the judge delivering the opinion.

The defendant was duly indicted for the murder of one John L. Carlson, at Anaconda. He was tried and convicted of murder in the first degree, and is now under sentence of death. A motion for a new trial was made and denied. The defendant appeals from the judgment, and from the order denying a new trial. The testimony for the prosecution fully warranted the jury in believing the killing to have been committed under the following

circumstances: On the twenty-fourth day of August, 1888, the defendant, with two men, the Anderson brothers, went into a saloon, known as the "Morse Saloon," at about eight o'clock in the evening. What the defendant claims took place there at that time is better shown by his testimony, which is hereinafter given in full. They left this saloon and went into another kept by one Wiegrun. While standing at the bar in this latter place, the defendant drew his revolver from his pocket, placed it on the bar, and said that "somebody was going to lick him and fight him, and that he did not care if he got killed or any one else." The testimony of the defendant himself shows that he had previously upon that evening placed the revolver in his pocket. The party then returned to the saloon known as the "Morse Saloon," at which the killing took place. The testimony shows that at this time Carlson, the deceased, was asleep at the table, in the stupor of intoxication. The two Anderson brothers immediately went to the bar with some of their friends who had invited them to drink; and the testimony also fully shows, contrary to the statement of the defendant, that the defendant attempted to force a quarrel upon a man named Hakan, who was sitting some distance from the bar, and that Hakan refused to gratify the defendant's desire. At that time the defendant was at some distance from the bar. While this altercation was in progress, the deceased, being aroused by the noise in the saloon, approached the two Anderson brothers, and either struck the glass or the arm of Charles Anderson, so that the beer was spilled upon Anderson's clothes, and the glass fell to the floor. There was some attempt on the part of the witnesses, undoubtedly friendly to the defendant, to show that Carlson struck Anderson, but the testimony firmly establishes this; that the altercation between him and the Andersons, if any, was of so slight a nature that those in their immediate neighborhood were in no way disturbed by it. The testimony further shows, although the defendant says to the contrary, that the defendant, at this time, walked to the bar and attempted to interfere between Anderson and Carlson; that he asked Carlson "why he [Carlson] was making trouble with these boys;" that Carlson replied to defendant that "it was none of his [defendant's] business;" that Carlson pushed, or attempted to push the defendant away; that the defendant then

took a few steps backward, drew his revolver from his pocket, and shot the deceased in the stomach; that after the shooting the defendant stood still, with his pistol in his hand, and pointed at the deceased, until the latter fell; that the defendant then left the saloon, and escaped from the Territory under an assumed name. There was testimony tending to show that the deceased was a powerful man, and that he had the reputation of being violent; but the legal testimony to this effect was very slight, and was contradicted by other testimony. The defendant himself testified that he did not know deceased, and that he had seen him but once before the day of the shooting. The defendant's testimony is as follows: "I did not know Carlson. I had seen him. At the saloon he came after me, and commenced licking me. One night, before the shooting, I met a man on the sidewalk in front of the Smelter Saloon. This man said to me, 'You had better look out, Johnson, somebody is going to kill you, or put a head on you.' That is the remark he made. I paid no attention to it at the time. This night I went to the saloon and sat at a table. Carlson, the two Anderson boys, and some others came, and commenced talking about me. Hullenburg [the keeper of the saloon] said to the others to keep a watch, they might get a rap or two. I went out with the Anderson boys. Bensington came after me. They asked me if I was afraid, and where I was going. I told them I was going to my boarding-house to lie down. We went by Jack Morse's saloon. I said to go in there, but they wanted to go to Wiegrun's. I thought about the words in the saloon, that they were going to lick me, and so I asked Morse to give me his revolver. Then we went to Wiegrun's saloon. We came back to the Morse Saloon, and went in to see what the noise was about. Hakan was quarreling, and I went up to him and told him he should not fight. While I was talking to him I was struck on the head by some one; I could not see who it was. I turned around and saw Carlson coming to me. He struck me on the mouth with his fist. Then I drew my revolver when he came up the third time. I only meant to keep him away, not to shoot him; but somebody grabbed my arm, and jerked it, and the revolver went off. I started out. I never spoke to Carlson. I once saw him kick a man in the face."

*Robinson & Stapleton,* for Appellant.

The only question raised is that the evidence was not sufficient to warrant a conviction of murder in the first degree, and the court should have granted a new trial.

Murder in the first degree must spring from malicious intention, deliberate and premeditated. The evidence in this case does not support a verdict of murder in the first degree. It shows the absence of the deliberation and premeditation necessary to constitute the crime. (*McCann* v. *People,* 6 Parker, Cr. C. 629; *People* v. *Johnson,* 1 Parker, Cr. C. 291; *People* v. *Foren,* 25 Cal. 362; *People* v. *Doyell,* 48 Cal. 86.)

If the act of killing is done immediately under the impulse of passion without time to form a deliberate intent, then the crime is only murder in the second degree or manslaughter. (*Anthony* v. *State,* Meigs, 265; 33 Am. Dec. 143; *People* v. *Long,* 39 Cal. 695; *People* v. *Sanchez,* 24 Cal. 17; *People* v. *Nichol,* 34 Cal. 214; *Leighton* v. *People,* 88 N. Y. 117; Statute of Montana, p. 505, § 21.)

The intent to kill may exist without making the crime murder in the first degree. (*People* v. *Bealoba,* 17 Cal. 395.)

The court erred in the trial in instructing the jury as to the crime of manslaughter. While the court defines the crime and instructs the jury properly that the defendant must show facts reducing the crime from murder to manslaughter, he fails to state clearly and explicitly the facts to which the jury may look for this purpose in considering their verdict. (2 Am. Crim. Law, § 978; *State* v. *Hill,* 4 Dev. & B. 491; 34 Am. Dec. 396; *State* v. *Ferguson,* 2 Hill (S. C.) 619; 27 Am. Dec. 412.)

*T. F. Frawley,* of counsel, for Appellant.

The verdict is against the evidence; the offense committed is not murder in the first degree. (*Darry* v. *People,* 10 N. Y. 120; *People* v. *Johnson,* 1 Parker, Cr. C. 291; *People* v. *McCann,* 6 Parker, Cr. C. 629; Wharton's Criminal Law, § 922; *Hurd* v. *People,* 25 Mich. 405; *McDaniel* v. *Commonw.* 77 Va. 281; *Drum* v. *Commonw.* 58 Pa. St. 16; *Craft* v. *State,* 3 Kan. 450; *People* v. *Potter,* 5 Mich. 1; *Maher* v. *People,* 10 Mich. 212; *Short* v. *State,* 7 Yerg. 510; *People* v. *Enoch,* 13 Wend. 159; *Bowers* v.

*State,* 5 Mo. 364; 32 Am. Dec. 325; *People* v. *White,* 24 Wend.
558, 581.) The statute of homicide in Kansas is almost identical
with that of Montana, and in *Craft* v. *State of Kansas, supra,* the
Supreme Court of that State considered the subject very fully
and learnedly, and if this court should follow that court in its
view of the law, or come to the conclusion there arrived at, then
the judgment herein will be reversed. The opinion in that case
has, I believe, never been criticised in any subsequent case, and
wherever referred to in the books I find it stated as a learned
and correct exposition of this statute.

The court erred in instructing the jury that if they found the
defendant guilty they must indicate by their verdict if it be
murder in the first or second degree, and for this the judgment
must be reversed. (*Territory* v. *Manton,* 7 Mont. 162; *Craft* v.
*State,* 3 Kan. 450; *Horne* v. *State,* 1 Kan. 42; *Ely* v. *Tesch,*
17 Wis. 202; *Randall* v. *Northwestern Tel. Co.* 54 Wis. 140;
*Town of Scott* v. *Town of Clayton,* 54 Wis. 499; *State* v. *Sumner,*
5 Black, 519.)

The court erred in refusing to instruct the jury that in deter-
mining if the defendant acted upon a sudden burst of passion,
and without malice or deliberation, they might take into consid-
eration all the circumstances existing at and about the time of
the shooting: whether the deceased was making an attack upon
the defendant; the nature of such an attack, if any; the relative
size and strength of the parties, and the character of the deceased
for violence; and for this error the judgment should be reversed.
(*Oliver* v. *State,* 17 Ala. 587; *Commonw.* v. *Seibert,* Pennsylvania
case cited approvingly in Wharton on Homicide [1st ed.], 227,
and Wharton on Homicide [2d ed.], 507, and in *Logue* v.
*Commonw.* 38 Pa. St. 265; *State* v. *Green,* 4 Ired. 404; *Cotton*
v. *State,* 31 Miss. 504; *Rippy* v. *State,* 2 Head, 217; *Monroe*
v. *State,* 5 Ga. 85; *People* v. *Garbutt,* 17 Mich. 16; *Little* v.
*State,* unreported Tennessee case, given in full and approved in
1 Crim. Def. 487; *Jackson* v. *State,* 1 Crim. Def. 476; *Keener*
v. *State,* 18 Ga. 194; *Queensberry* v. *State,* 3 Stew. & P. 308;
*Tackett* v. *State,* 1 Hawks, 210; *Pritchett* v. *State,* 22 Ala. 39;
*Franklin* v. *State,* 29 Ala. 14; *State* v. *Collins,* 32 Iowa, 36;
*State* v. *Keene,* 50 Mo. 357; *Payne* v. *Commonw.* 1 Met.
[Ky.] 370; *State* v. *Smith,* 12 Rich. 430; 1 Crim. Def. 695;

*Copeland* v. *State,* 7 Humph. 429; *State* v. *Thompson,* 9 Iowa, 188; *Grainger* v. *State,* 5 Yerg. 479; *State* v. *Benham,* 23 Iowa, 154; *Commonw.* v. *Riley,* Thatch. C. C. 471; *Floyd* v. *State,* 36 Ga. 91; *Pennsylvania* v. *Robertson,* Addis. 246.)

The court erred in not instructing the jury that as the offense was not committed by any of the specified means enumerated in the statute, that *prima facie* the crime was no greater than murder in the second degree. (*State* v. *Benham,* 23 Iowa, 154; *Drum* v. *Commonw.* 58 Pa. St. 16; *McDaniel* v. *Commonw.* 77 Va. 281; *Craft* v. *State,* 3 Kan. 450; *People* v. *Potter,* 5 Mich. 1.)

*John B. Clayberg,* Attorney-General for the Territory, Respondent.

To constitute murder in the first degree, there must not only be an intent to kill, but it must be deliberate and premeditated, except in special cases provided in the statutes, as where it occurs during the commission of another felony, etc.

To constitute murder in the second degree, no deliberation or premeditation is necessary. Some confusion has arisen in the California cases, from the opinon of the court in *People* v. *Long,* 39 Cal. 694, where it was said that there must be an intent to kill in murder in the second degree; that there must be malice, but cannot be premeditation or deliberation. This confusion was cleared away by the opinion of the court in the case of *People* v. *Doyell,* 48 Cal. 85, where the court distinguished between an intent presumed from the character of the weapon used and the real intent of the party, and held that if the evidence proved the very intent to take life, the murder is of the first degree.

It is equally well settled that it is not necessary that any appreciable time should exist between the provocation and the commission of the act, in order to make it murder in the first degree.

Objection is raised by appellant that the court refused to give a request which should have been given. If our position as to the evidence is correct, this court cannot consider this point. It cannot say that the request asked to be given was applicable to

the testimony, unless the testimony is properly on the record for the consideration of this court. (*Territory* v. *Bell*, 5 Mont. 562.) The substance of this request was given by the court. This is all the law requires. (*People* v. *Lachanais*, 32 Cal. 433 ; *People* v. *Ah Chung*, 54 Cal. 398 ; *People* v. *Murray*, 41 Cal. 66 ; *People* v. *Varnum*, 53 Cal. 630.)

It is also objected that the charge of the court contained in paragraph No. 7 (Transcript, pp. 69, 70), takes away from the jury the question of manslaughter. The court below charged very fully upon this point. A part of the charge cannot be segregated and relied upon as error, when the charge taken as a whole is correct. (*People* v. *Turcott*, 65 Cal. 126 ; *Williams* v. *State*, 83 Ala. 16 ; *Flemeister* v. *State*, 81 Ga. 768.)

BACH, J. — The counsel for appellant, in their argument in open court, have abandoned the position taken in their brief, that the evidence in this case shows no graver crime than manslaughter; and they now urge that the evidence does not justify the verdict of murder in the first degree. That the killing was unlawful is admitted ; that it was malicious is admitted ; but it is claimed that the evidence does not show wilfulness, deliberation, and premeditation, which are necessary to constitute murder in the first degree. The current of authorities undoubtedly establishes that there is a difference between a killing which is murder in the second degree, even when express malice is shown, and such a killing as is wilful, deliberate, and premeditated, as well as malicious. In order that the unlawful and malicious killing shall be murder in the first degree, it must be wilful ; that is to say, it must be intentional ; and it must also be deliberate and premeditated ; that is to say, when the killing is the result of an assault, the assault must have been made with the preconceived and determined design, intent, and purpose to kill, and the mind must be free from irresistible passion aroused or excited by great provocation. And it is also well settled that the deliberation and premeditation need not be of any considerable length of time previous to the assault. It is enough if the intent to take life was the result of deliberate premeditation, even though the act follow immediately upon the decision ; provided always that the mind is free from sudden heat or passion. But how do all

these refinements aid us in determining this question of deliberate and premeditated intent? Is murder in the first degree, other than that committed by torture, or poison, or perpetrated in the commission of a felony, to be confined to those cases where the accused declares his intent? Such a rule would be absurd. It would be open to two objections. The cases where the intent to kill is declared by the most depraved creature are not more rare than are those cases in which a declaration " I will kill you" is a declaration of any real intent to kill. The man who has fully determined to take away the life of a fellow-creature seldom declares his intention. The thoughtless declaration made by one during an excitement, or, as is more often the case, made carelessly, "that he will kill," forms no sure test. The nature of the weapon may give some clew; but the *res gestæ* of each case, the acts of the accused party before and at the time of the killing, form the surer test; and if a recitation thereof compels the mind of the listener to the conclusion that the assault was made with the wilful, deliberate, and premeditated intent to kill, then he may conclude that the killing was murder in the first degree. To such a conclusion the jury was forced in this case. To such a conclusion are the members of this court forced. The defendant arms himself with a revolver. He declares that trouble is awaiting him; that he is indifferent to it; and that his life or the life of some one else will pay the forfeit. Thereupon, bent upon mischief, or at least inclined· thereto, he enters a saloon, and, as he says, interests himself in Hakan's quarrel, which is of no interest to him, but, as others say, finds Hakan, and tries to force a quarrel upon him, and fails. Near by another altercation is in progress, so slight that those standing there pay no attention to it, but keep passing to an fro, as usual. Into this altercation the defendant forces himself, is told to mind his business, and is pushed by the deceased, who is so recently aroused from the stupor of intoxication that he staggers backward as a result of his own act. The defendant then walks a few steps away, takes from his pocket the pistol which he placed there with the remark that "some one might get killed," directs the pistol at the stomach of the deceased, and shoots him. That is not all; he stands there with the pistol in his hand, and pointed at the deceased, until the latter falls. Then he departs.

We are forced to the conclusion that the defendant was seeking the occasion to which he referred in Wiegrun's saloon when he displayed his pistol; that he tried in vain to force a quarrel upon Hakan; that finding a quarrel elsewhere he forced himself into that, and there found the occasion to satisfy the remark he made when he placed the pistol in his pocket; that he shot in the furtherance of that remark; and that when he stood, pistol in hand, he waited to see if he had accomplished his purpose. The cases cited by the appellant do not present facts similar to those in this case. In some of them there was no weapon of a deadly nature used; in some there was great provocation; and in some there was a question of self-defense. Of the cases cited, counsel seem to place most reliance upon those found in Parker's Criminal Cases. In the latest reports in the court of appeals of the same State will be found an authority, cited below, which, we think, is more closely analogous to the case under review.

In the case of the *People* v. *Majone*, 91 N. Y. 211, the testimony for the prosecution was to the effect that the defendant was living with his wife and with her parents; that he had not lived peacefully with them; that upon the day of the killing he entered the room in which his wife, his mother-in-law, and a friend were sitting, and asked his wife to procure for him a paper from an adjoining bedroom; that she replied that she was busy; that he thereupon seized her by the arm and led her to the bedroom, saying, "Will you go, or will I go?" and immediately shot her. He came back at once, and shot and killed his mother-in-law. It was further shown that the defendant had had the pistol for some time. The defendant was indicted for the last killing, and was convicted of murder in the first degree, and the conviction was sustained by the court of appeals.

In *People* v. *Hunt*, 59 Cal. 430, the facts upon which the jury convicted the defendant of murder in the first degree were as follows: The defendant entered a certain bar-room with one T., and began to shove T. backwards and forwards against the bar. G. (the deceased) stepped up to the defendant, and told him not to strike T. any more. Defendant turned partly around, and said: "What have you to do with this?" G. answered

that he was a peace officer. The defendant then struck G., who turned and moved away; whereupon defendant drew his revolver and shot and killed G. The Supreme Court affirmed the order denying a new trial. It must be remembered that the killing was done without any provocation sufficient to reduce the crime to manslaughter; in fact, that counsel for defendant admit that the evidence would sustain a verdict of murder in the second degree.

Whether a murder is in the first or in the second degree is for the jury to decide from the facts under careful instruction upon the law by the court. (*People* v. *Beckwith,* 103 N. Y. 360–369; *People* v. *Goslaw,* 73 Cal. 323, 324; *Territory* v. *Stears,* 2 Mont. 324.) By this is not meant that the jury may declare every unlawful and malicious killing to be murder in the first degree, without any evidence of fact to justify them ; but what is meant is this, that where there is evidence tending to show that an unlawful and malicious killing was committed wilfully, deliberately, and premeditately, the verdict of the jury will not be disturbed by this court. In this case the conduct of the defendant before the killing, his declaration before referred to, his arming himself with a deadly weapon at that time, his forcing himself into quarrels, the use of the deadly weapon, the shooting the deceased in such a part of the body as would tend to make the wound fatal, the absence of provocation, the defendant waiting until his victim had fallen, his rapid flight, and change of name, are evidence from which the jury, under instruction upon the law of the case, might well conclude that there was wilfulness, deliberation, and premeditation. (See the authorities cited. See, also, Wharton on Homicide, § 181, and cases there cited.)

It is urged that the court below erred in giving instruction No. 7, which is the *verbatim* copy of section 21 of subdivision 4, Compiled Statutes, defining murder in the first and second degrees. The concluding words of the instruction, as well as of the statute, are as follows: "And the jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder in the first or second degree." The purpose of this instruction is apparent. The court told the jury that it was the duty of the jury, and not of the court, to fix, by their verdict,

the degree of murder, provided the jury found the defendant guilty of murder. The case does not fall within the rule cited by counsel, that, where a special instruction is given erroneously, the error will not be cured by a general instruction stating the correct rule. The crime of manslaughter was not withdrawn from the jury; for immediately following this instruction the jury were fully charged upon the crime of manslaughter; and the jury were further told, in effect, that if they found the defendant guilty of an unlawful killing they could not find him guilty of any higher crime than manslaughter, unless the evidence proved to their satisfaction, beyond a reasonable doubt, each and every of the characteristics of such higher crime; and they were further told that they must acquit the defendant if they had any reasonable doubt as to his guilt.

The defendant relies upon *The Territory* v. *Manton,* 7 Mont. 162. In that case the jury were inadvertently told to convict the defendant of manslaughter if they had any reasonable doubt of his being guilty of murder in either of the degrees, the verdict "not guilty" being taken from them. It is apparent that the case is not in point.

It is urged that the court below erred in refusing to give the following instruction, as to character, requested by defendant: "In determining whether or not the defendant acted upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, as defined to you by the court, and without malice or deliberation, you must take into consideration all the circumstances existing at and about the time of the shooting; whether or not the deceased was making an attack upon the defendant; the nature of the attack, if any; the relative size and strength of the parties; and the character of the deceased for violence."

We might assign several reasons for sustaining the action of the court below in refusing this request. There was no evidence of any provocation which was apparently sufficient to arouse an irresistible passion, and this the counsel admit, when they abandon their claim that the gravest crime shown was manslaughter; therefore it might be claimed that the court properly refused the instruction for that reason, even though the request may have been proper if confined to the question of

deliberation alone. Again it might be urged that the instruction was elsewhere given; but we prefer to base our conclusion that the request to instruct was properly refused, upon the following ground, viz.: The request assumes that the character of the deceased for violence had been proved; at most, the defendant was entitled only to an instruction calling the attention of the jury to the evidence upon this point. In this case the assumption of the bad character of the deceased was particularly faulty, because there was very slight legal evidence tending to such a conclusion, as most of the witnesses gave their opinions, and not the reputation of the defendant.

The judgment and order appealed from are affirmed, and it is hereby ordered that the judgment of the court below be carried into execution upon the ninth day of August, A. D. 1889, in accordance with the terms thereof, as modified by the reprieve granted by the governor of Montana.

BLAKE, C. J., and LIDDELL, J., concur.