[Crim. No. 2219. In Bank.—July 5, 1919.]

# THE PEOPLE, Respondent, v. THOMAS BELLON, Appellant.

[1] CRIMINAL LAW — CRIME DIVIDED INTO DEGREES — JUDGMENT—PREVIOUS DETERMINATION OF DEGREE.—It is essential to proper pronouncement of judgment in the event of a plea of guilty of a crime distinguished or divided into degrees, such as murder or burglary, that the court first determine the degree.

[2] ID.—MURDER — PLEA OF GUILTY — PROCEEDING TO DETERMINE DEGREE—JUDICIAL DETERMINATION BASED ON EVIDENCE.—While the proceeding to determine the degree of the crime of murder, after a plea of guilty, is not a trial, there being no issue joined, the statute does require, at least impliedly, a judicial determination based on evidence.

[3] ID.—PROCEDURE.—The appropriate and proper method for a court to pursue in such a case is to receive such competent evidence from the respective parties as is material to the question of degree, and, the evidence having been concluded, to pronounce its determination thereon.

[4] ID.—MURDER—IRREGULARITY IN PROCEDURE—INSUFFICIENT GROUND FOR REVERSAL.—Upon this appeal from a judgment of death pronounced upon a plea of guilty to an information charging the appellant with murder and the trial court's determination that the murder was of the first degree and without extenuating circumstances, it is held there was no such material departure in procedure from the proper method as, under the circumstances appearing, would justify a reversal.

[5] ID.—UNSWORN STATEMENT OF DEFENDANT — RIGHT OF COURT TO CONSIDER.—In a proceeding to determine the degree of the crime of murder after a plea of guilty, the defendant cannot on appeal be allowed to urge that his statement may not be regarded as evidence because he was not sworn as a witness or required to make his affirmation or declaration as provided by section 2097 of the Code of Civil Procedure, where he voluntarily gave his statement and made no suggestion of objection to the procedure.

[6] ID.—MURDER IN FIRST DEGREE—SUFFICIENCY OF EVIDENCE.—It is also held herein the evidence was sufficient to sustain the conclusion that there existed the willful, deliberate, and premeditated intent to kill which is essential to first degree murder.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Affirmed.

The facts are stated in the opinion of the court.

Terry W. Ward for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—The defendant appeals from a judgment of death pronounced upon a plea of guilty to an information charging him with murder and the trial court's determination that the murder was of the fisrt degree and without extenuating circumstance..

[1] Under our practice it is essential to proper pronouncement of judgment in the event of a plea of guilty of a crime distinguished or divided into degrees, such as murder or burglary, that the court first determine the degree. (Pen. Code, sec. 1192; *People* v. *Jefferson,* 52 Cal. 452.) This the court did in the case at bar, but it is claimed that the determination was made in the entire absence of any evidence, and that in any event the evidence was not of such a nature as to support a conclusion of murder in the first degree.

[2] While, as has been held, the proceeding to determine the degree of the crime of murder after a plea of guilty is not a trial, there being no issue joined, the statute does require, at least impliedly, a judicial determination based on evidence. (See *People* v. *Chew Lan Ong,* 141 Cal. 550, [99 Am. St. Rep. 88, 75 Pac. 186].)  [3] The appropriate and proper method for a court to pursue in such a case is to receive such competent evidence from the respective parties as is material to the question of degree, and, the evidence having been concluded, to pronounce its determination thereon. [4] Passing for the moment the question of the sufficiency of the evidence to sustain a conclusion that there existed the willful, deliberate, and premeditated intent to kill which is essential to first degree murder, we are satisfied there was in this case no such material departure in procedure from the proper method as, under the circumstances appearing, would justify a reversal. The record shows that on October 3, 1918, the defendant, who was at all times accompanied by his attorney, entered his plea of guilty and the court announced that it was now the duty of the court to ascertain the degree. Thereupon the defendant, without having been sworn as a witness, was examined

by the district attorney and the court, both as to the circumstances of the crime and as to the things material to the statement required by section 1192a of the Penal Code to be sent to the clerk of the state prison in cases where a prisoner is to be punished by imprisonment therein. The examination of the defendant was intended to and did cover both of these matters. No objection whatever was urged by either the defendant or his counsel to the course pursued in this matter. While two other persons were briefly examined, their evidence threw no light on the material question of degree. The court thereupon announced its determination that the admitted murder was murder of the first degree, without extenuating circumstances, and fixed October 7, 1918, for judgment. At that time the district attorney was allowed to introduce additional evidence. Defendant, through his attorney, insisted that if additional evidence was to be received on the question of degree, he should be allowed to withdraw his plea of guilty and the matter should be submitted to a jury. No good reason for the granting of permission to withdraw the plea was suggested and the court properly denied the application. Nor can we conceive of any possible prejudice to defendant in allowing further evidence on the question of degree, in view of the determination previously announced. Certainly the effect of the additional evidence could not be to invoke more serious consequences to defendant than the determination previously announced. So far as appears, the court was willing, on October 7, 1918, to hear the testimony of any witness that might be produced by either party. The testimony having been concluded, the court announced that the new testimony had been taken "for further assurance" in the matter, and had confirmed the court in the conclusion previously arrived at, thus practically making a new determination. Judgment was then pronounced. Of course, the defendant could not have been compelled to give any evidence in the matter, but, as we have indicated, he voluntarily gave his statement, no objection whatever in this behalf being suggested prior to the appeal. Of course, also, if he was to testify, he should have been sworn as a witness or required to make his affirmation or declaration as provided by section 2097 of the Code of Civil Procedure. Here again there was no suggestion of objection by either defendant or his attorney prior to the filing of brief on this appeal. [5] We are

satisfied that he cannot now be allowed to urge that his state-
ment may not be regarded as evidence to be considered by the
trial court in fixing the degree.   Full knowledge that he was
not sworn as a witness must, of course, be attributed to
the defendant himself, and also to his attorney.   Their ac-
quiescence under such circumstances should be held to be a
waiver of objection.   (See generally on this subject, *Langford*
v. *United States,* 4 Ind. Ter. 567, [4 Ann. Cas. 1021, and note,
76 S. W. 111].)   Under the circumstances it cannot fairly
be held that the statement made by defendant was a mere
extrajudicial statement.

[6] As to the question of the sufficiency of the evidence
given by the defendant to sustain a conclusion of first degree
murder without extenuating circumstances we have no doubt.
Because his wife had had him arrested and had threatened
to have him "sent to the war," he journeyed from Dinuba
to Merced to her brother's home, whither she had gone, a
distance of many miles, with the deliberate design of killing
her.   He found her in bed, and having opened a razor he was
carrying, cut her "throat right there in bed."   It seems that
the wound thus inflicted on his wife did not produce death.
The wife's mother, with whose murder defendant was charged,
was occupying a bed in the same room, and apparently at-
tempted to intercept defendant immediately after he had thus
assaulted his wife.   He said that she was "just grabbing"
him, that "she had a shotgun right there, close to her bed
there and she grabbed me"; that he said to her, "Never
mind; I don't want to do nothing to you; go back," and that
she "grabbed" him, and "I had that razor."   He also tes-
tified as follows:

"Q. When you struck at your mother-in-law there with
the razor, did you just mean to scare her a little—is that what
you meant to do?

"A. No, sir; I told her not to take the gun; she had the
gun there and I cut her.   .

"Q. What did you strike at when you struck, what did you
strike at?   .

"A. I struck at the neck.

"Q. You struck at her throat?

"A. Yes. "

It further appeared that with the gun he shot at his brother-
in-law.

It is also true that he said: "I did not mean to kill the old lady; I told her to stay back"; that in response to a question, "You did not intend to kill your mother-in-law?" he answered, "No, sir, never in the world; if she didn't have that gun, I wouldn't touch her," and that in response to a question, "You intended to kill her too, didn't you?" he answered, "No, sir, I did not intend to kill her; I told her to go back"; but these statements as to his secret intention were not conclusive on the trial court in view of the facts as testified to by him. It may be noted that in the light afforded by a reading of his entire testimony, these statements do not appear to us to be necessarily inconsistent with a deliberate and premeditated intent to kill at the moment of the killing, but rather to mean that he went to the house without any preconceived design to kill his mother-in-law, and did kill her only upon her attempting to interfere with him after he had made the assault on his wife.

As was said in *People* v. *Machuca*, 158 Cal. 64, [109 Pac. 886], in discussing a question of sufficiency of evidence to sustain a conclusion of first degree murder: "It is not necessary that there should be express evidence of a deliberate purpose to kill. It could be inferred from such facts and circumstances in the case as would reasonably warrant an inference of its existence (citing authorities). That the deliberation which must precede the killing in order to make the murder one of the first degree need not have existed for any given length of time is thoroughly settled (citing authorities)." As has often been said: "There need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and if such is the case, the killing is murder in the first degree, no matter how rapidly these thoughts of the mind may succeed each other, or how quickly they may be followed by the act of killing." (See *People* v. *Hunt*, 59 Cal. 430, 435.) It is difficult to attribute any other design than that of killing to one who knowingly strikes at the throat of another with a sharp razor with such force and strength as to cause death.

It is also urged that no evidence was introduced to show the things essential to defendant's guilt of the crime of murder

committed in Merced County, such as that the mother-in-law was in fact dead, or that the crime was committed in Merced County. As to this it is sufficient to say that all of these things were admitted by the plea of guilty. It was only for the purpose of determining the degree of the admitted murder that any evidence at all was essential.

In considering this appeal we have not considered the transcript of the preliminary examination of defendant, for it constitutes no proper part of the record on appeal in this case. It was not offered in evidence in the court below until after the case had been finally closed and judgment had been pronounced and the appeal taken. It seems to have been admitted at this stage simply for the purpose of making it a part of the transcript on appeal.

Defendant's attorney, appointed by the court, with a degree of loyalty to his client's cause that is to be commended, has filed herein a very strong brief in support of the various contentions made. In some of his claims as to irregularity in the procedure below he is undoubtedly correct. But, as we have indicated, we are convinced that it cannot fairly be held that there was any such departure as, in view of the circumstances detailed, would justify a reversal.

The judgment is affirmed.

Lennon, J., Shaw, J., Olney, J., Wilbur, J., Melvin, J., and Lawlor, J., concurred.