[Crim. No. 3416. In Bank.—March 6, 1931.]

THE PEOPLE, Respondent v. FRANK D. KEATON, Appellant.

Paul Barksdale D'Orr and Thomas A. Reynolds for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

LANGDON, J.—This is an appeal by defendant from a judgment of the Superior Court of Los Angeles County, imposing sentence of death after conviction of murder in the first degree, and from an order denying his motion for a new trial.

On July 14, 1930, the defendant came to the courtroom of Judge Frank C. Collier. A civil trial was then in progress, in which Motley H. Flint, the deceased, was a witness. At the conclusion of his testimony, Flint walked off the stand, and when he reached the spectators' section, the defendant drew a pistol and fired three shots at him, which took instant effect. Defendant was at once taken to the police station and interrogated. It appeared that he was not personally acquainted with the deceased, but in some manner imagined him to be, with others, responsible for his financial losses. The following day he was indicted for murder. He pleaded "not guilty" and "not guilty by reason of insanity". Subsequently he withdrew his plea of "not guilty", and the trial was held on the other plea. The sole question presented to the jury, therefore, was whether the defendant was legally sane at the time he committed the act. In order to overcome the presumption of sanity,

and sustain the burden of proof on that issue, it must be made to appear "that the defendant, when the act was committed, was so deranged and diseased mentally that he was not conscious of the wrongful nature of the act committed". (*People* v. *Willard,* 150 Cal. 543 [89 Pac. 124, 129]; see, also, *People* v. *Sloper,* 198 Cal. 238 [244 Pac. 361].) ▪ Responsibility depends upon whether the defendant knew the nature and quality of the act at the time of its commission, and the wrongfulness of the act. If he had sufficient mental capacity to know what he was doing, and to know that it was wrong, he is legally accountable for his act. Even though he may be mentally abnormal or defective, or may suffer from some nervous disorder, he is, under our law, held to full responsibility for his act unless the evidence brings him within the strict legal meaning of insanity. (See *People* v. *Gilberg,* 197 Cal. 306 [240 Pac. 1000]; *People* v. *Sloper, supra.*)

Considerable testimony was presented at the trial which tended to show that the defendant was mentally defective. Indeed, two medical men, one produced by the defendant, and the other an alienist appointed by the court, were of the opinion that he was insane. Other witnesses, including neighbors of the defendant's family, testified to peculiar conduct on his part which tended, in their opinion, to show insanity. There was, however, a great deal of evidence to the contrary, both expert and nonexpert. In the face of this conflict, counsel for defendant concede, as they must, "that there is sufficient evidence in the record to sustain the verdict". ▪ Their appeal is taken on the theory that where there is a strong conflict in the evidence, any substantial error in the proceedings might tip the scales and prejudice the rights of the defendant. We agree that this is so, and have accordingly examined the entire record to determine whether any such error is present. No charge is made that any evidence was improperly introduced; and an objection leveled at an instruction of the court may be disposed of with the observation that the instruction was full and correct in all respects. Apart from the attack on this one instruction, the alleged errors are all concerned with the conduct of the deputy district attorney.

▪ The first of the instances of alleged misconduct was the comment by the deputy district attorney on the fail-

ure of the defense to call the family doctor of defendant as a witness. This is vigorously denounced as an attempt tő inject matters outside the record. The record shows that the defendant had been a patient of Dr. Walker, that the doctor was present at the jail when the defendant was being examined by the medical experts, and that he was present during the court sessions and was identified by rising when his name was called by the deputy district attorney during the course of the trial. His name appears in the record in a number of places. Under the circumstances, we do not deem the statement to be reversible error, if it was error at all, although it would doubtless have been better practice to have made no such reference. That it was not considered serious misconduct by counsel for defendant is clear, for no motion was made to strike it out, and no request was made that the jury be instructed to disregard it. If it did constitute misconduct, the error could have been cured by such instruction.

Considerable stress is laid also upon remarks of the deputy district attorney alleged to be derogatory to counsel for defendant. Of these, one example is sufficient: " . . . who else in fact would be able to go out and find even a Hollywood actor doctor to come in and say, because a man had a little twitching of the eyes, he had four kinds of insanity. Those are the acts of the great D'Orr! No wonder he was able to tell you in advance of his prowess, victories and success in swaying juries, and of his success in persuading men against all evidence." Statements of this type can hardly be said to deserve the importance given them in the brief of appellant. It seems to us that apart from the tribute, possibly a genuine one, made to defendant's counsel, the statement was nothing more than argument on the evidence, which is clearly within the proper scope of the closing address of the prosecutor.

We find none of the other assignments of misconduct worthy of mention, and we feel bound to say that, considering the length of the trial, the conduct of it was remarkably free from irregularities of any kind, and that the defendant was ably represented and his rights were safeguarded throughout the proceedings.

A final point which requires disposition is the refusal of the trial court to grant the motion of counsel for

defendant, made after the jury brought in its verdict, requesting that the defendant be tried as to his present sanity, under section 1368 of the Penal Code. The court's denial of this motion is assigned as error. We are satisfied, however, that the trial judge exercised a reasonable discretion in this instance. He had the opportunity to observe the defendant throughout the course of a protracted trial, and he concluded that the defendant's conduct at the trial was that of a sane man. Viewing this conclusion in the light of the evidence and verdict finding defendant to have been sane at the time of the commission of the act, the record discloses no ground upon which we might interfere.

It necessarily follows that the judgment and order of the trial court must be, and they are hereby affirmed.

Preston, J., Curtis, J., Richards, J., Seawell, J., Waste, C. J., and Shenk, J., concurred.