[Crim. No. 2662. Second Appellate District, Division Two.—March 6, 1935.]

THE PEOPLE, Respondent, v. NOAH CANTOR, Appellant.

I. R. Shultz and Friedman & Katzev for Appellant.

U. S. Webb, Attorney-General, and John O. Palstine, Deputy Attorney-General, for Respondent.

SCOTT, J., *pro tem.*—In April of 1931 an information was filed charging defendant with having committed the crime of robbery during the previous month. He entered a plea of "not guilty" and "not guilty by reason of insanity". In May, 1931, on the date of trial, a jury was impaneled to try the issue of the present sanity of defendant, and a verdict was returned finding him insane. He was thereupon committed to the Mendocino State Hospital. After approximately three and one-half years' confinement in that institution he was returned to court with a certificate that he "is now sane". The case was reset for trial on the issues tendered by his above plea, and in November of 1934 defendant appeared in court with counsel, waived a jury and proceeded with the trial. The court found him guilty of robbery in the first degree and found that a deadly weapon had been used in the perpetration of the crime. The issue as to defendant's sanity at the time of its commission was then tried, and the court found "that the defendant knew he was doing wrong and that therefore he was sane at the time of the commission of the robbery". Motion for new trial was made and denied. Probation was summarily denied and defendant was sentenced. He appeals from the judgment and order denying motion for new trial.

The sole contention of appellant is that the court erred in concluding that he was not insane at the time the crime was committed.

"The burden of proof is always on the defendant or upon the person who asserts the insanity of another to establish its existence by a preponderance of evidence." (*People v. Gilberg*, 197 Cal. 306 [240 Pac. 1000].) "In order to overcome the presumption of sanity and sustain the burden of proof on that issue, it must be made to appear 'that the defendant, when the act was committed, was so deranged and diseased mentally that he was not conscious of the wrongful nature of the act committed'. (*People v. Willard*, 150 Cal. 543 [89 Pac. 124].) See, also, *People v. Sloper*,

198 Cal. 238 [244 Pac. 362]. Responsibility depends upon whether the defendant knew the nature and quality of the act at the time of its commission, and the wrongfulness of the act. If he had sufficient mental capacity to know what he was doing, and to know that it was wrong, he is legally accountable for his act. Even though he may be mentally abnormal or defective, or may suffer from some nervous disorder, he is, under our law, held to full responsibility for his act unless the evidence brings him within the strict legal meaning of insanity. (*People* v. *Gilberg, supra.*)" (*People* v. *Keaton,* 211 Cal. 722 [296 Pac. 609] ; 8 Cal. Jur., p. 188.)

About 9 o'clock P. M. on the day of the robbery defendant waited around a service station until some customers had been served and then entered with a one-gallon can, asking to purchase gasoline. He inquired of the attendant, "Do you think this can is red enough to get by?" referring to the can he carried. When the attendant rang up the sale on the cash register defendant pointed a gun at him, said "Stand where you are," and then took the contents of the register. Defendant then had the attendant step outside, and as another attendant approached covered them both with his gun and said, "Now let's stand here like nothing is happening." In a moment a roadster drove up, defendant backed away, turned and jumped into the car. Half an hour later defendant and his companion were located and arrested. The loaded gun was found in the bottom drawer of defendant's trunk. An officer testified that after the arrest "defendant turned to Mr. Trapnell [his co-defendant] and told him to shut his mouth; that one man taking the beef was enough"; that defendant appeared cool and calm, and that at the police station he asked: "How many years does a guy get for robbery with a rod? About seven years, isn't it?"

From the foregoing and other evidence disclosed by the transcript it appears that the trial court may reasonably have concluded that defendant was not legally insane at the time of the holdup, and that he must be held responsible for his lawless act. (*People* v. *McConnell,* 80 Cal. App. 789 [252 Pac. 1068].)

Judgment and order affirmed.

Stephens, P. J., and Crail, J., concurred.