[Crim. No. 4008.  In Bank.—August 3, 1936.]

## THE PEOPLE, Respondent, v. LLOYD A. DALE, Appellant.

Donald D. Boscoe for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was accused by information filed by the district attorney of San Joaquin County of the crime of murder. To this charge he pleaded not guilty and not guilty by reason of insanity. The jury found him guilty of murder in the first degree, without recommendation, and sane. From the judgment and from an order denying his motion for a new trial, the defendant prosecutes this appeal.

The contentions advanced by appellant are as follows: (1) That the record is insufficient to prove that the killing was wilful, deliberate and premeditated; (2) that the district attorney was guilty of misconduct; (3) that the deputy sheriff submitted misleading statements to newspapers to such an extent that it was impossible to have a fair and impartial trial, and (4) that appellant's mental condition is such that this court ought to modify the judgment. We shall dispose of the contentions in the foregoing order.

We are unable to agree with appellant that the evidence is insufficient to justify a verdict of murder in the first degree. Without reciting all of the details, it appears that appellant was a well-known nomad who, from his proclivity for riding freight trains from coast to coast, was nicknamed "West Coast". On the evening of September 7, 1935, he was one of several hoboes sitting around a fire in the jungle near the railroad yards in Stockton. During the course of the evening, in response to an admonition from someone that, for fear they would be run out, they had better keep quiet, the appellant brandished a razor or knife, with the remark that he "would like to see anybody mess with" him, or "Nobody wants to bother with me, monkey with me here." It also appears that during the evening he smoked some marihuana. He was the last to leave the fire. Some time after 12 o'clock midnight, the appellant, according to his own testimony, started for a box car, with his bed roll on his shoulder and some cooking utensils in a blue bag, with the intention of going to sleep. On the way he met the deceased, an officer of the city of Stockton, employed by the Western Pacific Railroad Company, who flashed a light, carried in his right hand, in appellant's face. Still giving the substance of appellant's

testimony, he says he started to run when the light was flashed in his face, whereupon the officer grabbed him with his left hand; that, as he glanced around, he saw decedent reach for his gun with his right hand; that he was struck twice by the officer over the head with the gun; that, after the first blow, he asked to be let alone; that, after the second, he did not remember what happened and that when he first came to he was running away. He was subsequently arrested in January, 1936, in Niles, Ohio. On the morning of September 8, 1935, between 5 and 6 o'clock, the body of Officer Roderick Gordon was found on the Southern Pacific tracks, adjacent to the Western Pacific, with fourteen wounds or deep lacerations, as though made with a razor or knife, averaging two centimeters in length and described and located as follows: ''On the left anterior seventh rib level and the left anterior axillary line from the twelfth rib level, left posterior tenth rib level, right anterior aspects of the shoulder, left posterior third rib level, and right posterior third rib level, and the posterior aspect of the left arm five centimeters below the acromion, and two lacerations on the left lateral aspect of the neck about three centimeters above the clavicle; two deep lacerations on the left side of the face measuring seven and a half and fifteen centimeters in length; one deep laceration of the anterior aspect of the side of the neck seven and one-half centimeters in length, one deep laceration on the latro-posterior aspect of the left side of the neck eight and one-half centimeters in length deep enough to sever the left anterior jugular vein.'' There were no cuts on the decedent's arms or hands. Near his body were found the roll of blankets belonging to appellant and also his cooking utensils and cap. The deceased's pipe, the stem broken from the bowl, gun and ''billy'' were found. The gun was still buckled in its holster, although lying a few feet from the body, and the ''billy'' was in his pocket.

Under these circumstances, we must conclude that the jury was justified in concluding that defendant was guilty of a wilful, deliberate and premeditated killing. ▉ It is not necessary that there should be express evidence of a deliberate purpose. It is sufficient if the facts and circumstances reasonably warrant an inference to that effect. In this case the nature and number of the wounds inflicted,

the weapon used, and the threat to use the weapon; the fact that the officer's gun was still buckled in its holster and his "billy" still in his pocket; the inconsistency of appellant's story with the patent facts, were all proper subjects for the consideration of the jury and justified them in concluding that appellant was possessed of a deliberate purpose to kill the deceased. (*People* v. *Mahatch,* 148 Cal. 200 [82 Pac. 779] ; *People* v. *Machuca,* 158 Cal. 62 [109 Pac. 886] ; *People* v. *Bellon,* 180 Cal. 706 [182 Pac. 420].) Appellant's suggestion that the evidence establishes the affray was so sudden that there could have been no deliberation is answered by the well-settled rule of law to the effect that ▉ "There need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and if such is the case, the killing is murder in the first degree, no matter how rapidly these thoughts of the mind may succeed each other, or how quickly they may be followed by the act of killing." (*People* v. *Hunt,* 59 Cal. 430, 435, and *People* v. *Machuca* and *People* v. *Bellon, supra.*)

▉ We are unable to find any merit in the contention that the district attorney was guilty of misconduct. The contention is founded in part on the fact that the district attorney brought into court the articles of clothing worn by decedent at the time he was killed. The jury was advised by the trial judge to disregard the articles, unless and until they were introduced. The blazer to which appellant especially objects was introduced. It is inconceivable that the jury was improperly influenced. The remainder of the argument, which is entirely without merit, rests upon the following facts: While the district attorney produced pictures of the body and articles as they were when found, he did not at first bring all photographs taken into court or offer them; he was asked to produce certain unnamed witnesses, said to be in jail, and there were present at the trial the family of the deceased officer, of whom the district attorney called the widow to the stand for the purpose of identifying some of the clothing. The record discloses that when the district attorney was asked to produce the additional photographs he did so, and appellant was given the

opportunity to introduce them. It also appears that, although the defendant did not name the witnesses he desired, the district attorney offered to produce any witness the defendant wanted, whereupon counsel said: "I don't want the witnesses." It also appears in the record that the widow was called to the stand for the purpose of identifying an article of clothing, whereupon counsel stipulated that she would testify that it belonged to decedent. If anything were necessary to refute the claim of misconduct in the particulars mentioned, the facts appearing in the record, to which we have referred, would be sufficient.

The next assignment is equally without merit. It is claimed that the deputy sheriff gave misleading information to the newspapers, resulting in publicity of a character which rendered it impossible for appellant to have a fair and impartial trial. The record is devoid of any showing to justify the assertion. The argument, in fact, is largely based upon testimony of the deputy sheriff to the effect that defendant had burned all ten of his finger tips all the way around, in an effort to destroy his finger-prints.

We may now consider the most serious contention in the case. It appears that in October, 1926, appellant, who had enlisted in the army, was examined at Fort Leavenworth, Kansas, with respect to his mental condition, and found to be suffering from dementia praecox (paranoid type). He was transferred to St. Elizabeth's Hospital in Washington, D. C., for further observation and treatment. He was discharged from St. Elizabeth's and separated from the service on January 31, 1927, because he was disabled to the extent of one hundred per cent. In other words, he was not discharged because improved, but because he was unfit. However, four expert witnesses testified for the People to the effect that defendant was not insane. One of them, it is true, testified that he was suffering from dementia praecox, but said that he knew the difference between right and wrong. Therefore, even though it is difficult to understand what motive appellant had to commit the murder, assuming him to be sane, it is manifest that the verdict of the jury that he was not insane, is fully supported by the evidence and there is nothing which warrants our interference with that conclusion. Not being insane, appellant

must be held responsible for his act. (*People* v. *Keaton*, 211 Cal. 722 [296 Pac. 609].)

The judgment and order are and each of them is affirmed.

Langdon, J., Shenk, J., Seawell, J., Curtis, J., and Waste, C. J., concurred.