[No. 14251.   Department Two. — December 30, 1891.]

IN THE MATTER OF THE ESTATE OF S. P. TAYLOR, DECEASED.

WILL — CAPACITY OF TESTATOR — PETITION TO ANNUL PROBATE — OPINION EVIDENCE — QUESTION FOR JURY. — The capacity of a testator to make a will involves a question of law as well as of fact, and is for the jury to determine under instructions from the court; and the opinion of a witness as to such capacity is not admissible in evidence upon the hearing before a jury of a petition to annul the probate of a will on the ground of the alleged incompetency of the testator.

ID. — OPINION AS TO MENTAL SOUNDNESS. — It is competent for a witness to give his opinion as to the mental soundness of a testator, in connection with the facts upon which the opinion is based.

ID. — DOUBLE VERDICT — MENTAL INCOMPETENCY — INFLUENCE OF FALSE REPRESENTATIONS — INCOMPETENT EVIDENCE — PREJUDICIAL ERROR. — Where a jury, upon issues properly submitted to it, finds that the deceased was incompetent at the time of the execution of the will, and also that he was induced to execute it because of fraudulent representations by the legatee, and it appears that the court erred in admitting the opinion of a witness as to the capacity of the deceased to make a will, upon the issue of competency, it cannot be said that the jury were not also influenced by such incompetent testimony upon their finding upon the issues as to the undue influence of the false representations, and for such error the judgment must be reversed.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a motion for a new trial.

The facts are stated in the opinion of the court.

*J. A. Barham*, and *A. E. Bolton*, for Appellants.

*J. R. Leppo, contra.*

DE HAVEN, J. — On December 24, 1889, the superior court of Sonoma County admitted to probate a certain will of Simpson P. Taylor, deceased, dated October 29, 1889.   Thereafter a petition was filed in that court asking that the order admitting said will to probate be annulled and set aside, upon the alleged grounds of the incompetency of the deceased to make said will, and also, because at the time of making the same he was acting under the influence of certain fraudulent representations, alleged to have been made by one C. C. Taylor, a legatee named in the will.   Special issues were submitted to the jury, involving every question in issue, and the jury found, in substance, that all the allegations of the petition were true.   Judgment was thereupon entered annulling and revoking the probate of said will, and this appeal is from that judgment, and an order denying a motion for a new trial.

1. Mrs. Harriet Wetmur was a witness for contestants, and during her direct examination she was asked: "Will you tell the jury whether or not, in your judgment, from conversations you had with him, seeing what you saw, and knowing what you knew and now know about it, — whether, in your judgment, on the twenty-ninth day of October, 1889, Simpson P. Taylor was capable of making a will?" This question was objected to as incompetent and irrelevant; the objection was overruled, and the witness answered, in substance, that the deceased was not capable of making a will. The court erred in overruling the objection to this question.   Under section 1870 of the Code of Civil Procedure, the opinion of an intimate acquaintance respecting the mental capacity of a person is admissible, the reason for the opinion being given; but there is a wide difference between such an opinion and one as to whether a

testator at the time of the execution of his will pos-
sessed the *quantum* of intelligence or mental capacity
that in law is deemed sufficient to enable one to make a
valid disposition of his property. The latter involves
a question of law as well as of fact, and was in this case
the very thing for the jury to determine from the evi-
dence and under the instructions of the court.

The precise question we are now considering was be-
fore the supreme court of Alabama, in the case of *Walker*
v. *Walker*, 34 Ala. 470, and the court, in passing upon it,
said: " Capacity to make a will is not a simple question
of fact. It is a conclusion which the law draws from cer-
tain facts as premises. Hence it is improper to ask and
obtain the opinion of even a physician as to the capacity
of any one to make a will. Under our system that ques-
tion was addressed to the jury. All evidence which
tended to shed light on his mental *status* — the clearness
and soundness of his intellectual powers — should have
gone before them. This being done, however, the wit-
ness should not have been made to invade the province
of the jury."

The case from which we have just quoted was cited
and expressly approved by this court in *Conner* v. *Stan-
ley*, 67 Cal. 315. In that case the validity of a contract
made by a deceased person in his lifetime was a question
in issue, and the court held that it was error to allow
the witness to give an opinion as to the competency of
the deceased to made contracts with people who came to
him and claimed to be mediums, and " whether or not
they would have any undue influence over him."

So, also, in *Gibson* v. *Gibson*, 9 Yerg. 329, the inquiry
was as to the competency of a testator to make a will,
and a witness was asked " whether, from the situation in
which he saw the old man on that morning, and from
the facts which he had just stated to the jury, he believed
the old man was then in his senses, and *capable of mak-
ing a will.*" The court held this to be improper, saying:
" The latter part of the question, ' capable of making a
will,' as it involved a question of *law* and fact, and the

very question to be determined by the jury, was entirely illegal." To the same effect are the cases of *Fairchild* v. *Bascom*, 35 Vt. 398; *Farrell* v. *Brennan*, 32 Mo. 328; 82 Am. Dec. 137; *Runyan* v. *Price*, 15 Ohio St. 1; 86 Am. Dec. 459.

In this case it would have been proper for the witness to have given an opinion as to the mental soundness of the deceased, in connection with the facts upon which the opinion was based. The jury could then have judged of the value or weight of such opinion, by a consideration of the reasons upon which it was based, and if they deemed the opinion correct and that the testator was not mentally sound, the next question for them would be, whether such mental unsoundness affected his capacity to make a will; and in passing upon this, in addition to considering the fact of such mental unsoundness, the jury would have to be guided by the instructions of the court as to the nature and degree of mental unsoundness which would render the testator incapable of disposing of his property. But in allowing this witness to answer the question referred to, not only was the province of the jury invaded, but that of the court also, and the whole issue of law and fact was determined by the mere opinion of the witness.

What has been said applies also to evidence of the same general character given by other witnesses.

2. The jury also found that certain specific fraudulent representations were made to the deceased by one of the legatees, C. C. Taylor, and that by reason of such false and fraudulent representations the deceased was induced to execute the will in question. We think the evidence was sufficient to justify these findings; but we cannot say that these issues were so entirely independent of the one relating to the testamentary capacity of the deceased that the jury may not have been influenced in their findings upon this branch of the case by the erroneous evidence already referred to in regard to the want of testamentary capacity upon the part of the deceased. It cannot therefore be said that upon the whole case the error in admitting this evidence was harmless. The jury may have in

a great degree based their finding that the deceased was influenced by these false representations, upon his supposed want of capacity to make a will, his inability to understand the true relation of things. If the jury had believed the testator had the capacity to make a will, it may be they would have found that he was not unduly influenced by the alleged false representations.

Judgment and order reversed.

McFARLAND, J., and SHARPSTEIN, J., concurred.