[Civ. No. 2702. First Appellate District, Division Two.—February 28, 1919.]

LAIDA F. LEMLEY, as Administratrix, etc., Plaintiff and Respondent, v. DOAK GAS ENGINE COMPANY, Defendant and Appellant; PACIFIC FOUNDRY COMPANY, Defendant and Respondent.

[1] EMPLOYER AND EMPLOYEE — DEATH OF EMPLOYEE — ACTION FOR DAMAGES — ROSEBERRY ACT — ELECTION TO ACCEPT PROVISIONS— CONSTRUCTION OF ACT.—In this action for damages for the death of an employee, who was employed at a daily wage by one who at the time of the employment was not subject to the provisions of the Roseberry Act (Stats. 1911, p. 796), but who elected to accept the provisions of the act seventeen days before the accident in which the employee was killed, it is held that the failure of the employee, when the employer accepted the provisions of the act, to give notice in writing that he, the employee, elected not to become subject to the act, did not render him subject to its compensation provisions, since subdivision 2 of section 7 of the Roseberry Act has reference to the time of the employee's entering into the "contract of hire" mentioned in that section, and not to any automatic renewal each day of the contract of hire by going to work each morning.

[2] ID.—EMPLOYEE'S TIME TO ELECT.—The section of the Roseberry Act referred to plainly contemplated that an employee, under such circumstances as those in the present case, should have thirty days after the acceptance by the employer of the provisions of the act within which to elect whether he, the employee, would be bound by the act or not.

[3] ID.—EMPLOYEE'S FAILURE TO ELECT.—Failure of the employee to elect not to be bound for seventeen days after the employer became subject to the act was not an acceptance of the provisions of the act on his part, since the employee had thirty days within which to make such election.

[4] EVIDENCE—EXPERT OPINION—ACTION FOR DAMAGES FOR DEATH—BURSTING OF FLY-WHEEL—CAUSE OF ACCIDENT.—In an action for damages for a death due to the breaking of a fly-wheel while an engine was being tested, it was not improper to ask a witness who had assisted in making the tests and had testified fully regarding all the facts and circumstances surrounding the accident: "What, in your opinion, caused that fly-wheel to break?"

APPEAL from a judgment of the Superior Court of Alameda County.   William H. Waste, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Stanley Moore and Geo. K. Ford for Plaintiff and Respondent.

Fitzgerald, Abbott & Beardsley and Chickering & Gregory for Defendant and Appellant.

Thomas, Beedy & Lanagan for Defendant and Respondent.

LANGDON, P. J.—This is an appeal from a judgment for seven thousand five hundred dollars in favor of the administratrix of the estate of Clyde V. Lemley, deceased, on account of the death of said deceased.   There are two questions presented by the appeal.   The first of these is: Was the deceased at the time of the accident which caused his death subject to the compensation provisions of the Roseberry Act?

The facts of the case, pertinent to this inquiry, are as follows: Lemley, the deceased, was employed by the foreman of the defendant, Doak Gas Engine Company, about the middle of January, 1913, as a machinist's helper.   He continued to work daily at the plant of the defendant until March 8, 1913, the date on which he was killed.   He had been hired at a daily

wage.   At the time of his employment his employer, the defendant herein, was not subject to the provisions of the Roseberry Act.   On February 19, 1913, which was seventeen days before the day on which Lemley was killed, the employer elected to accept the provisions of this act.   The deceased had not given to the defendant any notice that he elected not to become subject to the compensation provisions of the act up to the time of his death.   It is conceded that the accident which brought about the death of Lemley arose out of his employment and occurred while he was acting in the course of his employment.   The solution of the first point raised by appellant depends upon the proper construction of section 7 of the Roseberry Act, [Stats. 1911, p. 796].   The significant portion of said section is as follows:

"Sec. 7. . . . Any employee as defined in subsection (2) of the preceding section shall be deemed to have accepted and shall, within the meaning of section 3 of this act be subject to the provisions of this act and of any act amendatory thereof, if, at the time of the accident upon which liability is claimed:

" (1) The employer charged with such liability is subject to the provisions of this act, whether the employee has actual notice thereof or not; and

" (2) At the time of entering into his contract of hire, express or implied, with such employer, such employee shall not have given to his employer notice in writing that he elects not to be subject to the provisions of this act, or, in the event that such contract of hire was made in advance of such employer becoming subject to the provisions of the act, such employee shall, without giving such notice, remain in the service of such employer for thirty days  after the employer has filed with said board an election to be subject to the terms of this act.''

[1]   The appellant seeks to bring deceased under the compensation provisions of said act by the contention that the contract of hire under which he was working at the time of his death was entered into after February 19, 1913, the date when the defendant became subject to the act, and that, therefore, deceased's failure to give notice in writing that he elected not to be subject to the act should be deemed an acceptance thereof.   In support of this position appellant argues that the original employment being at a daily wage was a contract from day to day under the presumption raised by section 2010 of the Civil Code, and ended at the close of the first day; and

that under section 2012 of the Civil Code, such express contract was replaced on each subsequent day that Lemley worked for the defendant by an implied contract of hire upon the terms of the original express contract. And this argument brings appellant to a position where it contends that the contract under which deceased was working at the time of his death was an implied contract entered into the day of the accident upon the same terms as the original express contract, and that the deceased was under the obligation of rejecting the compensation provisions of the act on the morning of the accident or of being bound thereby. Section 2012 of the Civil Code is as follows:

"Renewal of Hiring. Where, after the expiration of an agreement respecting the wages and the term of service, the parties continue the relation of master and servant, they are presumed to have renewed the agreement for the same wages and term of service."

We think that in this case since the employee actually made an express contract with his employer, the fact that under section 2012 he may have automatically renewed it each day upon the same terms as those of the original contract by going to work each morning, does not change the fact that the contract of employment was an express contract and was made about the middle of January, before the defendant was subject to the provisions of the act. Section 2012 merely provides for a renewal of the original contract. We think that the language of the Roseberry Act: "At the time of *entering* into his contract of hire, express or implied . . . , " has reference to the original contract of hire and not to any automatic renewal thereof. Appellant argues that since the words "express or implied" are used, the legislature must have meant by the word "implied," the implied contract raised by section 2012 of the Civil Code, because, appellant states: "It is hard for us to conceive of any transaction to which this term [implied] can be attributed unless it be such a contract as is implied in law by section 2010 and 2012 of the Civil Code." It is not difficult for us to conceive of an implied contract which shall also be the original contract of hire. "A contract is implied to pay for services accepted by the defendant under such circumstances as to raise a presumption that he expected or ought to have expected that they were to be paid for." (1 Parsons

on Contracts, p. 4; *Krieger* v. *Feeny,* 14 Cal. App. 538, [112 Pac.,901].)

[2] Section 7 of the act refers to the time of *"entering"* into the contract and not to the time of "renewing" it. We believe that the section of the act above quoted plainly contemplates that an employee, under such circumstances as those in the present case, shall have thirty days after the employer accepts the provisions of the act, within which to elect whether he (the employee) will be bound by the act or not. We are strengthened in this view by the fact, as pointed out by respondent in her brief, that the construction contended for by appellant would make it necessary for all employees whose compensation was fixed at a daily wage to file a notice with their employer each morning that they refused to accept the provisions of the act or else they would be bound thereby.

Appellant quotes from *Matter of Zany,* 20 Cal. App. 360, [129 Pac. 295], to the effect that a statute should be construed so as to avoid "absurd and unjust consequences," and we think that to so construe this statute as to place upon employees employed at a daily wage the duty of filing with their employer each morning a written notice that they refuse to be bound by the provisions of the act, would be to bring about a condition which would be both absurd and unjust. This clearly was not the intent of the legislature. The "contract of hire" mentioned in the section quoted, we think, means the contract of hire made at the time the employee began his employment. That contract may have been either express or implied.

[3] The act provides that where the contract of hire was made in advance of the employer becoming subject to the provisions of the act (as in this case), the employee shall become subject to the provisions of the act when he shall *remain in the service* of his employer without giving notice in writing that he elects not to be subject to the act for a period of *thirty days* after the employer has filed with said board an election to be subject to the act. In this case the employee remained in the employment only seventeen days after the employer became subject to the act, and therefore said employee did not become subject to the provisions of the act and the trial court properly so decided.

The second point raised by appellant is that the court erred in admitting the testimony of one Downie as to his opinion

of the cause of the accident, without any statement of the basis for such opinion, and that such error was prejudicial to the defendant.

The amended complaint set out three charges of negligence. First, that the deceased was not given a safe place to work; second, that the defendant knowingly directed the deceased to perform a particularly hazardous task without advising him of its dangerous nature; third, that the gas engine which was being tested by deceased at the time of the accident was being tested in a negligent manner in that no provision was made for the cooling of the fly-wheel after the same had been heated by friction and no protection was furnished to the employee against a possible breakage. The defendant company was engaged in the manufacture of internal combustion gas engines. On the day of the accident, certain engines were being tested as to horse-power, one of them being the engine which caused the accident. The manner of testing was as follows: "A two by four scantling about ten feet long was placed under the fly-wheel of the engine, and an employee was directed to exert an upward force on the end of the scantling, away from the engine. The scantling came in contact with the fly-wheel and necessarily retarded the same. Whether or not the requisite power was developed was determined by the amount of resistance the wheel could withstand. During a part of the day this engine was tested by a leather belt applied around the fly-wheel. The engine had been tested all day. The accident occurred late in the afternoon. The test was being performed by James E. Downie, a machinist employed by the defendant company. The fly-wheel had on several occasions during the day become heated. Lemley, the deceased, was a helper to Downie, the machinist, and was assisting in testing the engine. The deceased was instructed by Downie to hold the scantling against the fly-wheel of the engine while Downie went outside to inspect the exhaust pipe. While the deceased was applying this pressure the fly-wheel broke into many pieces, and a piece struck Lemley on the head, causing his death.

[4] The witness Downie was called for the plaintiff and after testifying fully regarding all the facts and circumstances surrounding the accident, he was asked the question: "Will you state to the jury what, in your opinion, caused that fly-wheel to break?" Defendant objected to this question as "incompetent, irrelevant, and immaterial and calling for the opin-

ion and conclusion of the witness on a matter not properly the subject of expert testimony, and upon the further ground that the proper foundation had not been laid, and it calls for an answer to the very question to be passed on by the jury." The court overruled the objection and the witness answered: "I think the heat done it. That is why I went up and felt the fly-wheel."

The ultimate questions to be passed upon by the jury were whether or not the engine was being negligently tested by the defendant company and whether or not the employer had furnished the employee with a safe place to work. However, even if the question of what caused the fly-wheel to break had been the question before the jury, we think there would have been no objection to receiving the opinion of the witness upon the subject for that reason. "It is sometimes said that an opinion is not to be offered on 'the very issue before the jury,' but this, as once remarked (*Snow* v. *Boston & Maine R. R. Co.*, 65 Me. 231), would rather 'seem to be a very good reason for its admission.' If the witness can add instruction over and above what the jury are able to obtain from the data before them, it is no objection that he refers to the precise matter in issue, and if his opinion is superfluous, it is inadmissible even if it concerns a matter not directly a part of the issue." (1 Greenleaf on Evidence, 16th ed., p. 551.)

No objection was made to the qualifications of the witness as an expert, and the appellant now urges that the facts upon which the opinion was based should have been stated to the jury so that the jury could judge as to the existence of such facts and be able to value the opinion accordingly, and that Downie in rendering his opinion really acted as one of the jury and usurped the functions of that body. The appellant quotes from several decisions in foreign jurisdictions to sustain his position. The precise question raised is carefully analyzed in volume 1 of Greenleaf on Evidence, sixteenth edition, at page 559. The statements there made seem to answer completely every argument of the appellant. It is pointed out that where a witness testifies by stating his inferences from facts *not personally observed by him,* it is necessary, for the sake of the jury in dealing with his testimony, that the data on which he bases his inference be specified by him and stated as assumed or hypothetical. It is also said that where the witness has personal observation of the facts upon which he

bases his opinion, these facts can be stated by him upon his direct examination or upon his cross-examination as the observed facts upon which he bases his opinion. But if he has not had any personal observation of the facts and forms his opinion merely upon testimony listened to or upon other intimations of the facts, it would be impossible for the jury, merely from his statement of opinion, to know what were the data for the opinion. It would therefore be necessary for him, in stating his opinion, not only to specify the data for it (if this were all, it might be done by a question on cross-examination), but to specify them hypothetically, i. e., as only assumed by him to exist. This is for the purpose of allowing the jury to reject the opinion as having no application to the facts of the case where the jury finds that the hypothetical facts upon which it is based do not exist. Thus, the necessity for stating the data hypothetically arises because the witness has no personal knowledge of them, and because it cannot be known, before the jury's retirement, what data they will find to be facts and therefore what opinions are applicable to the case as found by the jury.

The argument made by appellant that the witness in stating his opinion based upon facts which he had observed was "usurping the functions of the jury" is discussed by the author of the standard work on Evidence above mentioned. He points out that this objection, which has been frequently urged, has no foundation whatever, as the court does not empower the expert witness to decide any facts nor is the jury bound to accept his assertion.

The class of cases (from jurisdictions other than California) from which appellant quotes to support his contention is not overlooked by Mr. Greenleaf. In regard to them, we have the following language, which seems so peculiarly applicable to the present case, that we have thought it proper to quote it here: "As a matter of academic nicety, it might be thought to follow that even a witness speaking from personal observation might be required to specify the data for the opinion he founds on this observation; and to this extent a few rulings have gone. But *in such a case the direct examination or the cross-examination sufficiently brings out the data that serve to found the opinion on; and it may be taken as a proper deduction of principle that the hypothetical statement of the data need not*

*be made except by witnesses not having personal observation of the data for their opinion."*

The witness Downie had personally observed the facts connected with the operation of the engine on the day of the accident; he had been working upon it all day and up to a few moments of the accident; he had been making similar tests of engines for the defendant company for about a month before the accident. He had testified quite fully as to all facts connected with the operation and testing of the engine and both upon his direct examination and upon his cross-examination the facts appear upon which he must have based his opinion. If there are any which do not appear, the defendant might have brought them out upon cross-examination, and if it failed to do so, it may not complain.

In the case of *People* v. *Le Doux,* 155 Cal. 535, [102 Pac. 517], relied upon by appellant in its brief, the expert witness whose opinion was asked had made no personal observation of the facts. Necessarily, his opinion would have to be based upon hypothetical facts which should have been stated by him. In the case of *Eisenmayer* v. *Leonardt,* 148 Cal. 596, [84 Pac. 43] (the only other California case cited by appellant), the expert witness was asked his opinion of the value of certain stock, and the court held this to be error because "there were no facts stated either real or hypothetical as a basis for an intelligent opinion." This statement is clearly not applicable to the case at bar.

We find no error in the record, and the judgment is therefore affirmed.

Brittain, J., and Haven, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 28, 1919, and the following opinion then rendered thereon:

THE COURT.—In denying the application for a hearing in this court after decision in the district court of appeal of the first appellate district, we deem it proper to say that the statement in the opinion of the district court of appeal to the effect that no objection was made to the qualifications of the witness Downie as an expert is, in our opinion, erroneous, as

the objection "that the proper foundation had not been laid" fairly presented the question of the sufficiency of the evidence as to the expert qualifications of the witness. However, we are of the opinion that there was sufficient evidence as to such qualifications, and in so far as this ground was concerned, the objection was properly overruled.

The application for hearing is denied.

All the Justices concurred,