[Crim. No. 1343.   Third Appellate District.—April 13, 1934.]

THE PEOPLE, Respondent, v. GEORGE W. NORTON, Appellant.

John W. Ross, Jr., for Appellant.

U. S. Webb, Attorney-General, and Jess Hession, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant in this action was, on the sixteenth day of January, 1934, arraigned upon an information charging him with lewd and lascivious conduct, etc. To the information the defendant entered a double plea— "guilty", and "not guilty by reason of insanity". Following this plea a trial was had to determine the mental condition of the defendant at the date of the commission of the act to which he had pleaded guilty. The defendant having been found sane, this appeal is taken from the order of the court denying the defendant's motion for a new trial, and the judgment pronounced upon the plea of guilty and the finding of the jury that the defendant was sane at the date of the commission of the act alleged.

The first reason assigned for reversal is based upon the contention that the court did not follow the provisions of section 1027 of the Penal Code, wherein it is specified that where a defendant pleads not guilty by reason of insanity, two alienists must be appointed, at least one of whom must be from the staff of a state hospital.

The record shows that upon the entry of the plea of not guilty by reason of insanity, the court appointed Dr. Margaret H. Smyth, superintendent of the state hospital for the insane at Stockton, and Dr. E. M. Wilder, of Sacramento. No objection appears in the record to have been made as to the competency of either of the persons appointed by the court to examine into, report and testify as to the mental condition of the defendant.

The chief point of attack upon this appeal in this particular is directed against Dr. Wilder, in that the doctor, upon his cross-examination, in open court, stated that he was not an alienist, that is, he was not a person, at the present time, giving special attention to the treatment of mental disorders. While the language of section 1027, *supra,* appears to be mandatory in form, we think it is incumbent that the objection as to the competency of the person appointed by the court should be timely interposed in order

that the trial court may correct any error therein, if error there be. This appears to be the holding of this court in the case of *People* v. *Wiley,* 111 Cal. App. 622 [295 Pac. 1075].

█ The testimony of Dr. Wilder shows that the following foundation was laid for its introduction (we quote from the record as follows) : "Q. Of what medical institution are you a graduate? A. University of California Medical. Q. Have you made any special study of mental disorders or mental diseases? A. Well, I began in the Napa State Hospital for two years when I was a young man; since that time I have studied it and been qualified as an expert in some of the counties of the State and in the Federal court. Q. That presupposes, does it, examination of persons whose mental condition is under question?˙ A. Yes, sir, that presupposes it." The witness further testified that there had come under his observation and for him to pass upon, between 300 and 500 cases where the mental condition of the patient was in question. The physician further testified that he was giving special attention, and had been for some time, to other diseases. Upon cross-examination the doctor further testified: "Q. Now, Doctor, as a matter of fact you are not a specialist in insanity, are you? A. No, I am not a specialist in insanity; I do not treat the insane. The courts have been kind enough to qualify me as an expert in the examination of the insane—that is the distinction."

Undoubtedly, so far as the record goes, it shows that the doctor has had abundant opportunity to acquaint himself with the mental condition of innumerable persons, and necessarily acquired sufficient skill in observation and accuracy of judgment to enable him to testify as an expert in insanity cases. That the doctor had for some years ceased making any special study of mental disorders or treating the insane would not, we think, constitute sufficient grounds for holding him an incompetent witness.

█ Just what constitutes an alienist under the terms of section 1027, *supra,* appears not to have been decided by any of the cases called to our attention. Nevertheless, we think the language means some person qualified by reason of experience, knowledge and previous opportunities to examine and give his opinion as to the mental condition of a defendant at a particular time. Having specified that

one of the persons appointed shall be a member of the staff of one of the state hospitals of the state, it necessarily excludes the idea that the other person appointed shall, at the time of the appointment, be engaged in the exclusive study of mental cases or in their treatment, but that if such other person has, by previous experience, acquired sufficient knowledge to enable him to examine and determine the mental condition of a defendant, then and in that case we do not see how it can be urged that the court has erred in the appointment of such a person, especially in view of the fact that no objection was raised as to the testimony of such person, and no motion made to strike out his testimony on the ground that it was given by one not properly qualified. In other words, under the circumstances here presented, we think it was for the trial court to determine whether Dr. Wilder did or did not possess the qualifications necessary to testify under the provisions of section 1027, *supra,* as an alienist, even though he did not in fact designate himself as such. It appears to be more a difference in name than in substance.

██ The second ground alleged for reversal is that the testimony is insufficient to support the verdict. While there is considerable testimony in the record that the defendant was of low mentality and acted queerly in a great many instances, the record shows, in coming back to the basis of his action, the jury might very well have attributed all of such peculiar acts to the long-continued inebriety of the defendant. The record shows that the defendant was addicted to the excessive use of intoxicants; that he was sent to the Napa State Hospital, and there confined for six months on account of alcoholism. The testimony of Dr. Wilder and of Dr. Smyth is to the effect that while the defendant was of low mentality, he knew the difference between right and wrong, was, in their opinion, sane, even though he had suffered from alcoholism, and perhaps had come very close to having delirium tremens. The jury, we think, might very well have concluded that many of the strange acts testified to by the different witnesses as performed by the defendant were the result of alcoholism, and not of insanity. Low mentality, is not, in law, insanity, and does not excuse one who otherwise is able to distinguish between right and wrong.

■ We find no error in the rulings of the court as to the admission and exclusion of testimony. While appellant assigns the exclusion of certain correspondence or records of the Sacramento Chapter of Red Cross, it clearly appears that the offered testimony was merely hearsay, not authenticated in any manner. The record does not disclose anything that would justify the introduction of the correspondence referred to under the provisions of subdivision 2 of section 1940 of the Code of Civil Procedure, as claimed by the appellant. The correspondence at best would only be hearsay testimony as to the mental condition of the appellant.

■ It is further contended by the appellant that the court erred in its instructions to the jury, particularly calling our attention to proposed instruction No. 9 offered by the defendant. The substance of the proposed instruction, however, was given by the court in the following words: "Duly qualified experts may give their opinions on questions in controversy on trial. To assist the jury in deciding such questions the jury may consider the opinion, with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion if it should be found by them to be unreasonable."

The only difference between the instruction given and the offered instruction was that the jury might consider the professional standing and experience of the witnesses in arriving at their verdict. It is almost commonplace to say that such matters would be considered by the jury, as well as the appearance of the witnesses and the manner in which they testified.

■ It is finally contended that the court erred not only in denying the defendant a new trial, but also in refusing to impanel a jury and determine the question of the defendant's sanity at the time of pronouncing judgment. In behalf of such contentions the appellant presented several affidavits, all of which are similar in form and substance, and, therefore, the setting forth of one will answer for all. The affidavit of Clara Berry, sworn on behalf of the defendant, is in these words: "That she has known the defend-

ant herein, George W. Norton, intimately for the ten years last past; that by reason of such intimate acquaintance she has had exceptional opportunities to observe, and has so observed the acts, conduct and conversations of the defendant herein; that affiant herein believes that the acts, conduct and conversations of defendant herein, George W. Norton, is not normal, and therefore believes, and is of the opinion that the said defendant, George W. Norton, is now insane.'' No facts are set forth; nothing appears in the affidavit upon which the trial court could conclude that the opinion of the affiant had any real basis. This is true of all the affidavits. The court had, during the trial of the action, abundant opportunity to observe the acts and conduct of the appellant, and the mere opinion of an affiant, without the setting forth of any tangible facts on which it is based, is not sufficient to justify this court in holding that the trial court was in error, or that its conclusions were not absolutely correct.

As against the affidavits to which we have referred, the prosecution presented two affidavits, of which we make special mention of that of Dr. Wilder. After setting forth his qualifications relative to his ability concerning mental disorders, Dr. Wilder's affidavit reads: ''That affiant did, on the 23rd day of January, 1934, examine one George W. Norton, defendant herein; that he talked with said defendant; that he made a physical examination of said defendant, determining therefrom that his reflexes and coordinations were normal, and that there was no evidence of injury or physical deterioration of the brain or central nervous system; that he made a mental examination of said defendant from which he determined that said defendant was properly oriented as to time and place; that his memory was not impaired; that he was without evidence of hallucinations, illusions or delusions; that while said defendant is of a low degree of mentality and intelligence, having progressed only a short distance in formal schooling by reason thereof, still he has apparently improved somewhat in intelligence with increasing years; that instead of having become disordered in mind, he is intelligent and rational; that he is capable of working under direction; that he has a history of excessive and periodical use of alcohol,

but presents none of its characteristic mental deteriorations; that by reason thereof affiant believes, and it is his opinion that said defendant, George W. Norton, is now sane.''

In support of this contention that the court should have impaneled a jury to determine the question of the appellant's sanity at the time of pronouncing judgment, the case of *People* v. *Vester,* 135 Cal. App. 223 [26 Pac. (2d) 685], is called to our attention, wherein appears a quotation from a Texas court (*Guagando* v. *State,* 4 Tex. 626) as follows: ''When an affidavit is made by a respectable person that a defendant charged with crime has become insane, a jury should be impaneled to try the issue of insanity before proceeding with the cause, and this though the party-making the affidavit is unknown to those in attendance on court.'' This abstract statement is not a complete setting forth of the law relative to the questions here presented. The fact that an affidavit is made by a respectable person, of course, entitles the affidavit to consideration, but unless the affidavit sets forth facts showing that the affiant has some basis for his conclusions, it presents nothing for the court upon which to determine the merits of the application.

While section 1368 of the Penal Code provides for determining the question of the sanity of a defendant at the time of pronouncing judgment, and provides that if a doubt arises in relation thereto a jury should be impaneled and a trial had to determine such issue, it means that such doubt must be entertained by the trial judge, and not merely based upon the opinion of an affiant who gives no substantial reasons therefor. The correct rule is stated, we think, in 8 California Jurisprudence, page 196, as follows: ''While ordinarily a doubt should be raised when statements under oath are made by a credible person, that the defendant is insane, a court is not constrained to entertain this doubt simply because counsel entertained such a belief proceeding from some conversations with the defendant, or because a witness testifies that he believes the defendant to be insane. On the contrary, a trial court has ample opportunity to and should, as its duty, observe and note the defendant's mental condition from time to time, and in particular on the day when his present insanity is suggested. The knowledge so gained may contribute largely toward

rebutting any possible inference of present legal insanity deducible from the facts stated in an affidavit of counsel, or by a witness. The mere fact that evidence as to the present insanity of a defendant is admitted in evidence does not show that the court entertains a doubt as to his present sanity, as such evidence is admissible to prove insanity at the time of the crime charged. . . . The code provides no procedure for creating a doubt of the present insanity of a defendant, and much must be left to the discretion of the trial court.''

Finding nothing in the record justifying a reversal, it follows that the order and judgment of the trial court should be affirmed, and it is so ordered.

Pullen, P. J., and Thompson, J., concurred.