[Crim. No. 2955.   Second Appellate District, Division Two.—March 15, 1937.]

THE  PEOPLE,  Respondent,  v.  LEE  ARNIC  WOODS, Appellant.

Anna Zacsek for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

CRAIL, P. J.—The defendant was convicted of the crime of rape and sentenced to the state prison. The issues under his pleas of "not guilty" and "not guilty by reason of insanity" were separately tried in one trial, the jury returning successive verdicts of "guilty" and "sane". This appeal is taken from an order denying defendant's motion for a new trial and from the judgment.

It is first contended by defendant that the court committed prejudicial error in refusing to permit a *voir dire* examination of the jury when the issue of sanity was reached. The same jury tried the issue as to defendant's guilt and the issue as to his sanity. The record shows that the jury was "duly impaneled and sworn to try the case" prior to the trial of either issue. We must assume that the jurors were fully examined on *voir dire* at the beginning of the trial and, since no objection appears in the record, the jury was acceptable to the defendant. The fact that two separate issues were tried consecutively does not alter the situation—there was but *one* trial. (*People* v. *Leong Fook*, 206 Cal. 64 [273 Pac. 779].) It was within the discretion of the trial court to determine whether the issue of sanity should be tried before the same jury or a different one (Pen. Code, sec. 1026), and no abuse of such discretion has been shown. Further examination, if desired by defendant, should have been asked for and made during the selection of the jury at the beginning of the trial. (*People* v. *Davis*, 84 Cal. App. 192 [270 Pac. 715]; *People* v. *Foster*, 3 Cal. App. (2d) 35 [39 Pac. (2d) 271].)

The defendant makes the above his first and primary contention for reversal, and in this behalf he sets forth at great length the record and references thereto which indicate that before the issue of guilty or not guilty was tried, only the defendant's plea of "not guilty" was stated by the clerk to the jury "although defendant had already pleaded not guilty and not guilty by reason of insanity", and that at this time the jury was to try *only* the issues raised by the plea of not guilty, and that three days later the jury was again sworn and the defendant's plea of "not guilty by reason of insanity" was stated to the jury. After presenting this record the defendant proceeds—"As we have [thus] shown, it affirmatively appears in the record herein that the jurors were

not examined fully or otherwise on *voir dire* at the beginning of the trial.'' We fail to follow the defendant in the reasoning by which he reaches this conclusion. It is true the record shows that the jurors were sworn three times, the judge stating at the third time the jurors were sworn, ''It may not be necessary, but as a precautionary measure, I will ask you to swear the jury again.'' We fail to see how swearing the jury three times, even though unnecessary, was prejudicial to the defendant, and we fail to see how this proves the defendant's contention that ''it affirmatively appears in the record herein that the jurors were not examined fully or otherwise on *voir dire* at the beginning of the trial''. The record says that before the jurors were first sworn they were duly impaneled and there is nothing in the record to the contrary.

The trial court appointed three alienists for the purpose of determining and making a report on the question of defendant's sanity, it being stipulated that if two agreed, the third need make no report. Section 1027 of the Penal Code provides that the court must appoint two alienists and may appoint three and that in making the appointments at least one must be from the medical staffs of the state hospitals. Defendant now urges as a ground for reversal, that it does not appear that any of the alienists appointed by the court were from the staffs of the state hospitals. The examination of an accused by alienists who are appointed by the court is not a jurisdictional proceeding and may be waived. (*People* v. *Wiley*, 111 Cal. App. 622 [295 Pac. 1075].) Nowhere does it appear that any objection was made to the alienists who were appointed, either during the trial, or on motion for a new trial. This would indicate that the requirements of the section had been met or had been waived. (*People* v. *Norton*, 138 Cal. App. 70 [31 Pac. (2d) 809].) This objection cannot be made for the first time on appeal. Furthermore, in view of the fact that the record fails to disclose, either affirmatively or negatively, that any of the alienists were or were not from the staffs of the state hospitals, we must assume on appeal that the provisions of the section were complied with.

We are asked to decide whether or not the reports filed by the alienists are in agreement and, if not, whether or not it was error for the court to excuse the filing of a re-

port by the third alienist. Inasmuch as the reports in question were not included in the record on appeal, we must assume that they were in agreement.

■ It is next contended by defendant that the court committed prejudicial error in admitting the testimony of one alienist, over objection, as to the result of his examination of defendant, which was made about forty days subsequent to the time when the crime was committed. The objection on appeal is that the evidence was too remote. The record shows that no objection was made in the trial court, but merely the following: "If the Court please, his mental condition, I submit, on July 28, 1936, and what the evidence is of his mental condition on June 21 or 22, 1936, forty days or more prior to that time . . . " The question cannot be raised for the first time on appeal. (*People* v. *Smith,* 121 Cal. 355 [53 Pac. 802]; *People* v. *Manning,* 48 Cal. 335.)

■ Finally the defendant contends that by permitting the two alienists to give, over his objections, their opinions concerning the defendant's ability to determine between right and wrong, the trial court committed prejudicial error. In this behalf the defendant relies almost wholly upon *People* v. *Jacobs* (Cal. App.) [51 Pac. (2d) 128]. Unfortunately for the defendant, but fortunately for the People of California, the opinion in that case is resting in a judicial morgue, having succumbed to a painless lethal gas in the form of an inoffensive order by the Supreme Court transferring the case to a higher sphere. The opinion did not get further than the advance sheets and does not appear in the permanent volumes of the reports. It is not the law in California.

The contention of the defendant is that such evidence from the experts invades the province of the jury. There has been some confusion in the cases with regard to this matter and we feel that in deciding defendant's contention we must give our reasons at some length. The question has not been directly discussed in California, except in the Jacobs case, *supra.* There are, however, cases in which experts have been permitted to give their opinions on the issues to be decided by the court. (*Lemley* v. *Doak Gas Engine Co.,* 40 Cal. App. 146, 152 [180 Pac. 671]; *Estate of Russell,* 189 Cal. 759, 774 [210 Pac. 249].) In the Jacobs case and in the cases from other jurisdictions in which it has been decided that it is reversible error to admit such evidence, the decision is always

based upon the theory that to do so is an unlawful invasion of the province of the jury.

A sufficient and all-controlling answer against defendant's contention is found in the fact that in California whenever such questions are answered by an expert, it is the duty of the court to give the following instruction (Pen. Code, sec. 1127b): "Duly qualified experts may give their opinions on questions in controversy at a trial. To assist the jury in deciding such questions, the jury may consider the opinion *with the reasons stated therefor*, if any, by the expert who gives the opinion. *The jury is not bound to accept the opinion of any expert as conclusive*, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable." Thus in such instances the trial court does not empower the expert witness to decide any fact, nor is the jury bound to accept the expert's assertions, and the province of the jury is not invaded. (Pen. Code, sec. 1127b; and also see 10 Cal. Jur. 962, note 6; 10 Cal. Jur. 972, notes 11 and 12.) The trial court gave the above instruction in the instant case.

There are additional reasons why this should be the rule in California. In this state there are several distinct, legal tests for determining when a person is sane or insane. In a criminal case where the plea of insanity is entered, the test is whether the defendant knows the nature and quality of his act at the time of its commission *and the wrongfulness of the act*. (*People* v. *Keaton*, 211 Cal. 722 [296 Pac. 609].) Under the provisions of section 1368 of the Penal Code, where during the course of the trial, doubts arise as to the sanity of the accused, the test is "whether he understands and appreciates the nature of the proceedings had against him". Under the provisions of section 2168 of the Political Code providing for the commitment of insane persons to the state hospital the test is whether the individual is so far deranged in mind as to be a danger to himself or others. Another test arises upon the question of the capacity of a testator to make a will. If the expert is limited to giving his opinion that the person is insane, the jury will never know what test the expert took into consideration as his basic test of insanity. In a criminal case, if the expert cannot be asked his opinion as to whether the accused knew right from wrong,

then the jury is left absolutely in the dark as to whether or not the expert is applying in his mind the correct test of insanity. The expert may be applying a wholly different test and still be technically correct in saying that the accused is sane or insane, and be wholly incorrect for the purposes of the case if he is not applying the "right and wrong" test. Judges with experience in the trial of insanity cases know that medical experts have many and different definitions of and tests for insanity. They speak of insanity in a medical sense and in a legal sense. In *Estate of Sexton*, 199 Cal. 759, at 765 [251 Pac. 778], it is said: " 'Insanity' is a broad, comprehensive and generic term of ambiguous import. In a medical sense, it is used to denote any unsound and deranged conditions of the mind, and every degree of mental unsoundness, whatever may be its source or cause." How often have trial judges heard a medical expert give his opinion that a person is insane, and discover thereafter that in the sense in which he uses the word, "any disease or defect of the brain regardless of the extent of the effect of that disease on the brain is insanity", or "any person is insane who has the slightest destruction of cell tissue of the brain or who has syphilis of the central nervous system". Sound reason demands that the jury be not kept in the dark as to the true basis upon which the expert renders his opinion.

In a large sense also the answers of an expert to such questions constitute "a statement of the reasons for his opinion" as to the sanity or insanity of the accused, which the law contemplates.

It is no more an invasion of the province of the jury for an expert to give his opinion that an accused is insane including the correct legal test than for him to give his opinion merely that the accused is insane, and none of the cases hold that it is an invasion of the province of the jury for the expert to give his opinion that the witness is insane. It cannot fairly be argued that any prejudice is caused the accused by allowing the jury to know the basis upon which the expert has reached his conclusions and the grounds therefor. On the one hand, if the jury does not believe the expert's opinion that the accused is insane merely, it will disregard the opinion. On the other hand, if the jury does not believe the expert's opinion that the accused knew the difference between right and wrong, it will likewise disregard the opin-

ion; for the jurors are instructed that the question is for them to decide and that they are not bound to accept the opinion of any expert as conclusive, and that they may disregard any such opinion if it shall be found by them to be unreasonable. For citations which tend to support our conclusions see 11 Ruling Case Law, 584; *People* v. *Keaton,* 211 Cal. 722 [296 Pac. 609]; *People* v. *Willard,* 150 Cal. 543 [89 Pac. 124]; *People* v. *Sloper,* 198 Cal. 238 [244 Pac. 362].

The defendant relies also upon the case of *People* v. *O'Brien,* 122 Cal. App. 147 [9 Pac. (2d) 902]. But that case involved nonexpert witnesses solely and the question as to what expert witnesses might testify to in insanity cases was not involved. The question before us was not directly discussed. Nevertheless, the O'Brien case quotes the following from the *Estate of Schulmeyer,* 171 Cal. 340 [153 Pac. 233]: "Expert witnesses may give their opinions concerning the mental condition of a person. *They* are not restricted to the mere declaration of an opinion that the person is or is not of sound mind, but may state the nature and extent of the deficiencies, if any, which they believe to exist." In the early and so-called leading case of *Estate of Taylor,* 92 Cal. 564 [28 Pac. 603], the question was whether an expert witness might properly testify *as to the capacity of a person to make a will.* The Supreme Court said that "in allowing this witness to answer the question referred to, not only was the province of the jury invaded, but that of the court also, and the whole issue of law and fact was determined by the mere opinion of the witness". The trial courts have attempted to follow the precedent there set, on numerous occasions, but it should be observed and remembered that the question presented in the Taylor case actually did involve the issue of ultimate fact in the case and actually did involve the whole issue of law. It was as if a witness were asked in the instant case: "Is the defendant guilty?" The question propounded to the witness in the instant case does not involve any issue of law, and while it involves a question of fact, the fact is only one of the elements necessary in order to determine the defendant's legal sanity or insanity, an element upon which it is well for the jury to have some evidence in order to reach its own conclusion.

Judgment and order affirmed.

Wood, J., and McComb, J., *pro tem,* concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 12, 1937.