[Crim. No. 5434. In Bank. Sept. 25, 1953.]

THE PEOPLE, Respondent, v. BOYD VAN WINKLE, Appellant.

Gerald J. Kenny, Public Defender, and Joseph I. Mc-Namara, Deputy Public Defender, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

SHENK, J.—This is an appeal from a judgment of convictions and from orders denying motions for a new trial. Under Count I of the indictment the defendant was found guilty of the murder of Police Officer Robert Walters and the extreme penalty was imposed. Under Count II he was found guilty of assault with intent to commit the murder of Special Officer Lawrence Jones, and was sentenced to imprisonment for the term prescribed by law. (Pen. Code, § 217.) To each count the defendant interposed pleas of not guilty and not guilty by reason of insanity.

The sole contention of the defendant is that the trial court committed prejudicial error in requiring the same jury which had returned the verdicts of guilty to then determine the question of the defendant's sanity under the provisions of section 1026 of the Penal Code.

The record shows that on September 19, 1952, at approximately 4:30 p. m. the defendant, carrying a paper bag, entered the offices of the Personal Finance Company in San Francisco and inquired about a loan. Upon being shown into the manager's office he withdrew a gun from the bag and ordered the manager to open the safe. He was informed that there was no safe in the manager's office. After threatening the manager he returned to the general work area and ordered all employees to put their hands on their desks and keep them there. A customer entered about that time and was ordered at gun point by the defendant to sit down after leaving a payment of money on the counter top. The defendant then handed the manager the paper bag and ordered him to fill it with currency from the cash drawers and a strongbox. This the manager did. As the defendant left with the paper bag filled with currency he picked up the money left by the customer and ordered the employees not to sound an alarm. However the employees attracted the attention of police officers in the street several floors below and informed them of the robbery. The officers rushed to the door of the building as the defendant came out. Officer Walters attempted to arrest him. They moved to the sidewalk where wrestling took place.

Special Officer Jones attempted to assist Walters by restraining the defendant who then fired three shots, two of them entering Walters' abdominal region and the third striking the little finger of his left hand. Jones threw the defendant to the sidewalk and tried to seize the gun. Jones was shot once in the wrist, and a second bullet was spent as it penetrated a magazine carried in the inner pocket of his coat. The defendant then broke away and as he fled from the scene was shot down by Officer Walters from where the latter had collapsed on the sidewalk. The paper bag containing $837 was found on the sidewalk after the shootings. Walters died as a result of his wounds on September 26, 1952.

At the trial the defendant was identified by the manager and the employees of the finance company as having committed the armed robbery in the offices of the company a few minutes before the shootings. These and other witnesses testified that the defendant walked steadily and calmly, spoke clearly and coherently and appeared to be fully conscious of what he was doing at all times during the robbery. There was evidence that following his apprehension the defendant admitted that he walked down the stairs from the offices of the finance company and took a wrong door into the basement, that he retraced his steps and went out through the main doorway; that he was accosted by the officers as he passed through the door; that he committed the robbery because his "funds were running low"; and that he shot the officers because he "wanted to get away." The defendant relied upon evidence of a long history of mental illness which he claims rendered him unconscious for certain periods of time and particularly during the time when the alleged offenses were committed. He took the stand in his own behalf and testified that he could remember nothing of what happened on September 19, 1952, from early morning until he found himself engaged in a life and death struggle with two unknown assailants. It would seem unnecessary to say that the evidence abundantly supports the convictions on the pleas of not guilty.

Section 1026 of the Penal Code provides in part that, "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been com-

mitted. If the jury shall find the defendant guilty . . . then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same jury or before a new jury in the discretion of the court. . . ."

Following the verdicts of guilty on the pleas of not guilty the court set a date eight days in advance for the trial before the same jury on the pleas of not guilty by reason of insanity. In open court the foreman of the jury then stated: "Your Honor, I think it is an imposition to ask this jury to sit on the trial further, and I wish to offer our objections as to sitting on the second phase of the trial. That may have no bearing on the case, but that is our feeling." Counsel for the defendant then pointed out that the court had the right to select a new jury if the present jurors did not want to sit on the sanity question. The court made the following statement: "That is a matter for the Court, Mr. Kenny [Counsel for the defendant]. I would prefer that this same jury decide the question of insanity, since you have heard the entire evidence in this case so far." At the beginning of the trial on the sanity issue counsel for the defendant objected on the ground that the jury should not be allowed to serve. The objection was overruled. The same objection was later unsuccessfully asserted as grounds for a new trial.

It is the contention of the defendant that the statement of the foreman gave notice to the court that members of the jury had prejudged the question as to the defendant's sanity; that they were prejudiced at the outset of the trial on this issue, and that to order that jury to serve on the sanity issue deprived the defendant of a fair and impartial trial.

 There is no basis for the contention that the jurors had prejudged the question of the defendant's sanity. The reason given by the foreman for requesting their discharge was that it was "an imposition to ask the jury to sit on the trial further." The foreman also indicated that the jury's request had no bearing on the case itself but was made for personal reasons. There is no indication elsewhere in the record that the jury was biased against the defendant. In view of these circumstances the court acted within the discretion conferred upon it by section 1026 in requiring the same jury to sit through the entire proceedings. No abuse of discretion has been shown.

 During the sanity trial the prosecution called the three alienists appointed by the court to determine the defendant's

sanity in accordance with section 1027 of the Penal Code. These doctors testified that in their opinions the defendant was sane at the time of the robbery and the following assault and homicide. The only other evidence offered on the question of sanity was the testimony of the defendant himself who reiterated statements he had made on the trial of his plea of not guilty to the effect that he was not conscious of what transpired during the robbery until he was seized by the police officers. This conflicted with the testimony of the doctors who testified further that the defendant was not only legally sane at the time of the crimes, but that he was also sane by medical standards and that he was fully conscious and in control of his actions. This expert opinion was in line with the testimony of numerous other witnesses that the defendant walked steadily and calmly, spoke clearly and coherently and appeared to be fully conscious of what he was doing. The jury's verdict that the defendant was sane at the time the offenses were committed is also fully supported by the evidence.

The question raised by the defendant on this appeal is not new. It has been held in other cases under similar circumstances that the court could require the same jury to serve throughout the trial. (*People* v. *French,* 12 Cal.2d 720, 765 [87 P.2d 1014]; *People* v. *Goodwin,* 9 Cal.2d 711 [72 P.2d 551]; *People* v. *Goold,* 215 Cal. 763 [12 P.2d 958]; *People* v. *Woods,* 19 Cal.App.2d 556 [65 P.2d 940]; *People* v. *Willison,* 116 Cal.App. 157 [2 P.2d 543].)

The defendant had a full and fair trial. The evidence in support of his convictions is beyond question. The offense charged in Count I and proved on the trial was first degree murder under section 189 of the Penal Code. The allegations of Count II charging an assault with intent to commit murder were conclusively proved to be true.

The judgment and the orders denying the motions for a new trial are affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.